# CIVIL COVER SHEET

%JS 44  (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

*Charles A. Rehberg*

**DEFENDANTS**

*James P. Paulk, Kenneth B. Hodges, Kelly Burke, Dougherty G.* etal.

(b) County of Residence of First Listed Plaintiff  **Dougherty County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Dougherty County**
(IN U.S. PLAINTIFF CASES)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Bryan A. Vroon
Vroon & Crongeyer LLP    *401 607 6712*
1718 Peachtree Street, Suite 1000

Attorneys (If Known)

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                      and One Box for Defendant

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product  Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability / ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &  Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'  Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability  Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine  **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle  Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability / ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☒ 195 Contract Product Liability | ☒ 360 Other Personal  Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment  Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/  **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations / ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment / ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - / ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☒ 440 Other Civil Rights  *42 U.S.C. 1983* | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. 1983
Brief description of cause:
causes of action under 42 U.S.C. 1983 for violations of constitutional rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                      DOCKET NUMBER

DATE
January 23, 2007

SIGNATURE OF ATTORNEY OF RECORD
/s/ Bryan A. Vroon, Esq.

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### ALBANY DIVISION

| | | |
|---|---|---|
| **CHARLES A. REHBERG,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **V.** | ) | |
| | ) | |
| **JAMES P. PAULK, IN HIS** | ) | |
| **INDIVIDUAL CAPACITY;** | ) | |
| **KENNETH B. HODGES, III, IN HIS** | ) | **CIVIL ACTION FILE** |
| **INDIVIDUAL CAPACITY;** | ) | **NO._____** |
| **KENNETH B. HODGES, III, IN HIS** | ) | |
| **OFFICIAL CAPACITY AS** | ) | |
| **DISTRICT ATTORNEY OF** | ) | |
| **DOUGHERTY COUNTY;** | ) | |
| **KELLY R. BURKE, IN HIS** | ) | |
| **INDIVIDUAL CAPACITY, AND** | ) | |
| **DOUGHERTY COUNTY,** | ) | |
| | ) | |
| **Defendants.** | ) | **JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

1.    Plaintiff Charles A. Rehberg, a resident of Dougherty County, Georgia, states his Complaint as follows against Defendants James P. Paulk, in his individual capacity; Kenneth B. Hodges, III ("Ken Hodges"), in his individual capacity and in his official capacity as District Attorney of Dougherty County; Kelly R. Burke, in his individual capacity; and Dougherty County, a political subdivision in the State of Georgia.

2.    Plaintiff Charles A. Rehberg is a resident of Dougherty County, Georgia.

3.    Defendant James P. Paulk is the Chief Investigator in the Dougherty County District Attorney's Office. At all times referenced in this Complaint, Mr. Paulk was employed by Dougherty County in this capacity. Mr. Paulk may be served with the Complaint and Summons at his business address of Office of the District Attorney,

1

Albany-Dougherty Judicial Building, 225 Pine Ave., Room 231, Albany, Georgia 31701.  Mr. Paulk is subject to the jurisdiction and venue of this Court.

4. Defendant Kenneth B. Hodges, III is the District Attorney of Dougherty County and held this position at all times referenced in this Complaint. Mr. Hodges is named as a defendant in his individual capacity and in his official capacity. Each Count of this Complaint specifies whether the allegations are against Mr. Hodges in his individual or official capacity. Mr. Hodges is subject to the jurisdiction and venue of this Court.  He may be served with the Summons and Complaint at his business address of Office of the District Attorney, Albany-Dougherty Judicial Building, 225 Pine Ave., Room 231, Albany, Georgia 31701.

5. Defendant Kelly R. Burke is named as a defendant in his individual capacity.  He may be served with the Summons and Complaint at his business address of Office of the District Attorney, 201 Perry Parkway, Perry, Georgia 31069. Mr. Burke is subject to the jurisdiction and venue of this Court.

6. Defendant Dougherty County is a political subdivision of the State of Georgia and may be served with the Summons and Complaint through Jeff Bodine Sinyard, Chairman of Dougherty County Board of Commissioners, 1702 West Town Road, Albany Georgia 31707.  Mr. Rehberg has provided Dougherty County with written notice of his claims, although O.C.G.A. 36-11-1 does not apply to Plaintiff's federal and state constitutional claims or his claims against Dougherty County employee James Paulk in his individual capacity.

7. This Court has personal jurisdiction over the Defendants.

8.      The Court has subject matter jurisdiction over this action under 42 U.S.C. § 1983

and 28 U.S.C. § 1331.  The claims asserted in this Complaint arise under federal law

and present issues of federal law.  This Court has supplemental jurisdiction under 28

U.S.C. § 1367 to adjudicate state law claims that arise out of a common nucleus of

operative facts.

9.      Venue is proper in this Court because a substantial portion of the events giving

rise to this Complaint occurred within the Albany Division of this District.

## FACTUAL ALLEGATIONS

10.      By way of introduction to Mr. Rehberg's claims, on December 14, 2005, Charles

Rehberg was indicted on charges of aggravated assault, burglary and "harassing

telephone calls" in Dougherty County. According to Dougherty County Criminal

Indictment No. 05-R-1253,    Mr. Rehberg allegedly assaulted Dr. James Hotz by

"suggesting that the accused had a weapon, when the accused did confront the victim

in the victim's home, and such act placed the victim in reasonable fear of immediate

serious bodily harm, contrary to the laws of said state, the good order, peace and

dignity thereof." In the same indictment, Mr. Rehberg was also charged with burglary

and accused of "intentionally, unlawfully and without authority enter[ing]…[the]

home of Dr. James A. Hotz…with the intent to commit therein the crime of

aggravated assault." Both the charge of aggravated assault and the charge of burglary

are felonies punishable by imprisonment up to 20 years under Georgia law.  The

Indictment also included six counts of "harassing telephone calls", misdemeanors

punishable by imprisonment of up to one year each.

11.     The truth is that Mr. Rehberg has never been to the home of Dr. Hotz. The charges against Mr. Rehberg were false.  There is no evidence whatsoever that Mr. Rehberg committed a burglary or aggravated assault on anybody as he was charged. There is no evidence that he was ever a party to any burglary or aggravated assault. There is no evidence that a burglary or aggravated assault or simple assault ever even occurred.  The "harassing telephone calls" as alleged, were in regard to faxes sent by Mr. Rehberg critical of a public hospital which were clearly free speech as protected under the U.S. Constitution.

12.     The persons who handled the investigation which led to these charges and indictment were James P. Paulk, Chief Investigator employed by Dougherty County in the District Attorney's Office, Dougherty County District Attorney Ken Hodges, and Kelly Burke, a specially appointed prosecutor in this matter.

13.     There was never any police report of any alleged assault or burglary. Dr. Hotz never filed any police report or reported any assault or burglary to the Dougherty County District Attorney's Office or the Albany Police Department.  Neither the Albany Police Department nor any other agencies were ever involved in any investigation of this alleged assault or burglary.

14.     The Chief Investigator, Mr. Paulk, testified that he and Mr. Hodges initiated and handled the investigation of Mr. Rehberg supposedly because "of lack of confidence in the City police department to handle it." (Paulk Dep. p. 25).  Mr. Paulk testified, "There's [sic] a lot of problems with the Albany Police Department, lack of credibility in their work product." *Id.*

4

15.     When Mr. Paulk and a former Dougherty County Investigator, Mr. Barry McKinley, were deposed in August of 2006, Mr. Rehberg learned of the facts which form the basis of these claims against Mr. Paulk and Dougherty County.

16.     In the original Grand Jury proceeding, only one witness testified: Mr. Paulk. Mr. Paulk is listed as the "complainant" in the indictment against Mr. Rehberg. (Paulk Dep. pp. 19-20). Mr. Paulk admitted that he told the Grand Jury, "These are true and accurate facts based upon the indictment." *Id*. at p. 109.

17.     Yet, Mr. Paulk has now admitted that he never interviewed any witnesses or gathered any evidence indicating that Mr. Rehberg committed any aggravated assault or burglary. (Paulk Dep. p. 111). He has now admitted his "lack of knowledge and preparation." (Paulk Dep. p. 78). He never even interviewed the supposed recipients of the anonymous faxes who were somehow "harassed." *Id*. Based upon information and belief, one of the alleged fax recipients did not even have a fax machine. Additionally, one of the so-called fax "victims" was Congressman Sanford Bishop who, when interviewed by the press, stated that his office was never harassed by the faxes in question or any faxes from constituents stating their opinions.

18.     Mr. Paulk has testified that it is "unfortunately" normal and common for him and other investigators employed by Dougherty County and working under the supervision of the District Attorney to testify without adequate knowledge or preparation or personal knowledge of the facts being attested to as true. At his deposition, Mr. Paulk somehow blamed the "incompetence" of the Albany Police Department for this common practice and custom.

19.     Based on the investigation conducted by Mr. Paulk, Mr. Hodges, and Mr. Burke, there was no probable cause to indict Mr. Rehberg on charges of burglary, aggravated assault or "harassing" phone calls.

20.     The three indictments of Mr. Rehberg were widely covered in the local and state press, including the Albany Herald, WALB-TV, WFXL-TV, and the Atlanta Journal. Mr. Burke conducted interviews with the press and also issued press statements in which he addressed challenges by Mr. Rehberg's counsel and stated, "[I]t is never free speech to assault or harass someone, no matter who they are and no matter how much you don't like them." Mr. Burke represented to the public and the press that Mr. Rehberg had committed an assault. Mr. Burke also publicly stated, "It would be ludicrous to say that an individual has the right to go onto someone else's property and burn a cross under the guise of free speech, which is tantamount to what these defendants are claiming." Mr. Burke's statements were published in the press. Mr. Burke publicly indicated that Mr. Rehberg illegally went onto "someone else's property" and committed an assault.

21.     Mr. Rehberg's counsel filed pleadings attacking the legal sufficiency of the first indictment and a hearing was scheduled by the presiding judge. On February 2, 2006, District Attorney Kelly Burke dismissed and nol-prossed the entire indictment prior to the scheduled hearing, thus terminating the first Indictment, Criminal Indictment No. 05-R-1253.

22.     Mr. Burke and Mr. Paulk appeared before a second Grand Jury on or about February 15, 2006, and engineered yet another indictment of Mr. Rehberg which was issued February 16, 2006.   The second Indictment included charges of "simple

assault" and five counts of "harassing telephone calls." Mr. Paulk again appeared as a state witness along with Dr. James A. Hotz. The indictment charges Mr. Rehberg "with the offense of Simple Assault, for that the said accused, in the County aforesaid, on or about August 22, 2004 did commit an act which placed James A. Hotz, the victim, in reasonable apprehension of immediately receiving a violent injury, to wit did by actions suggest that he had a weapon which placed the accused in fear of receiving a violent injury, contrary to the laws of said State, the good order, peace and dignity thereof." Mr. Rehberg still had never been to the home of Dr. Hotz and was nowhere near Dr. Hotz on August 22, 2004. There was no evidence whatsoever that Mr. Rehberg committed an assault on anybody as he was charged. There was no evidence that he was a party to any assault, nor that an assault or simple assault even ever occurred. The faxes sent by Mr. Rehberg were not "harassing telephone calls" as alleged, but rather free speech as protected under the U.S. Constitution. No probable cause existed for any of the charges against Mr. Rehberg.

23. Before the second Indictment, it was widely reported in the press that Dr. Hotz had filed no police report of any incident and that several so-called "victims" of the faxes did not consider themselves victims. It was also reported that no individual had filed a complaint, and Dougherty County Chief Judge Loring Gray had even commented to the press on inaccuracies in the allegations of the indictment.

24. Mr. Rehberg's counsel filed a motion attacking the legal sufficiency of the Second Indictment and the presiding judge scheduled a hearing. At a pretrial hearing held on April 10, 2006, Mr. Burke announced in open court that Criminal Indictment No. 06-R-121 was, or would immediately be dismissed. However, Mr. Burke failed to

dismiss the Indictment as he had represented to the court.  As a result, on July 7, 2006, as requested by Mr. Rehberg's counsel, the Court dismissed the entire Indictment by Order of the Court, pursuant to the District Attorney's announcement made on April 10, 2006, thus terminating Criminal Indictment No. 06-R-121.

25.    Mr. Burke and Mr. Paulk appeared before a third Grand Jury on March 1, 2006 and secured Criminal Indictment No. 06-R-183 again charging Mr. Rehberg with "simple assault" and "harassing telephone calls." Again, Mr. Rehberg's counsel filed pleadings attacking the legal sufficiency of the pleadings and the presiding judge scheduled a hearing.

26.    On May 1, 2006, Judge Harry Altman issued two orders dismissing all charges against Mr. Rehberg. With respect to the charges of "harassing phone calls," Judge Altman found that "the conduct set forth in the indictment is not a violation of the statute [O.C.G.A. § 46-5-21], as alleged."   With respect to the charge of simple assault, Judge Altman determined that the indictment "only refers to actions, just a repeat of the term without any description of the act." Judge Altman further found that the indictment does not refer to a specific time or time period, but refers only to an occurrence 'on or about August 22, 2004…'" The Defendants were not put "on notice of the actions of which the Indictment refers." Judge Altman concluded that the Indictment "does not sufficiently charge the Defendants with a criminal defense."

27.    The second Indictment, Indictment No. 06-R-121 was not dismissed until July 7, 2006. Even though Mr. Burke had announced in open court on April 10, 2006 that such indictment was or would be immediately dismissed, he failed in fact to do so.

Upon request by Mr. Rehberg's counsel, Judge Altman therefore dismissed such Indictment by Order dated July 7, 2006.

28.     The Orders of Judge Altman were never appealed.

29.     After three indictments, the criminal charges against Mr. Rehberg are no longer pending. However, the damage to Mr. Rehberg has been done. Probable cause never existed for any of the charges alleged against Mr. Rehberg. Yet he was the subject of an extensive illegal investigation conducted as a political favor.  Mr Rehberg was indicted three times, arrested, and was forced to pay significant attorneys' fees to defend himself. He was charged with two felonies punishable up to 40 years in prison, traumatized by the fear of going to prison for the rest of his life expectancy, and leaving his wife and two young daughters.  Mr. Rehberg suffered medical problems from the stress of the indictments, was subjected to extensive publicity in the media where he was identified as being charged with multiple felonies and misdemeanors, and publicly identified by the acting District Attorney as having committed an assault and burglary.  The damage of three indictments on his public record will remain with him and his wife and children for the rest of their lives.

30.     Mr. Rehberg is a Certified Public Accountant. He handles assets and financial matters of others. The trust others place in him and his reputation and integrity are critical to his profession, career, and earnings. These wrongful indictments will always be associated with his name and have caused and will cause significant personal, professional and economic damages to Mr. Rehberg.

31.     Mr. Rehberg sent anonymous faxes during the period September 2003 through March 2004 which criticized and parodied the management and activities of Phoebe

Putney Memorial Hospital, a public entity operated on property owned by the Albany-Dougherty County Hospital Authority. Sending such faxes is not a crime under Georgia law. Never in history has any person in Georgia been prosecuted for sending faxes of this nature.

32.     In retaliation for Mr. Rehberg exercising his rights to free speech, he was indicted and charged with multiple misdemeanors and felonies. What happened to Mr. Rehberg should not happen in a country with the right of free speech and due process.

33.     A former investigator employed by Dougherty County with the Dougherty County District Attorney's office, Barry McKinley, has testified that the investigation of Mr. Rehberg was a political favor. (McKinley Dep. pp. 42, 46, 144).     Mr. Mckinley repeatedly testified that the investigation "stunk." (McKinley Dep. p. 25). "It's kind of like bad tuna, it stunk." (McKinley Dep. p. 26). When asked to explain, Mr. McKinley testified, "I'm fishing for the right words. It did not have the makings of a good case. It was one of these, 'I know something is going on and you can't prosecute.'" (McKinley Dep. p. 66). Mr. Paulk has admitted that Mr. McKinley told him the investigation "stunk," yet Mr. Paulk, ignoring Mr. McKinley, continued the investigation leading to Mr. Rehberg's indictment on false charges. (Paulk Dep. p. 57).

34.     Mr. McKinley also called the investigation "distasteful." (McKinley Dep. p. 73). "The number one source of distaste is that the criminal system could be used like this…"(McKinley Dep. p. 73).

35.     Mr. Paulk has admitted that he told other witnesses that the investigation of Mr. Rehberg was a "favor" to Phoebe Putney Memorial Hospital. (Paulk Dep. pp. 75-76,

115 ). Mr. Paulk testified, "I made the comment, 'Well, you know, Phoebe owes me. I'm doing Phoebe a favor.'" *Id.* at 115. Other witnesses have confirmed Mr. Paulk's admission that he was doing Phoebe Putney a favor by investigating Mr. Rehberg.

36.     In the investigation of Mr. Rehberg, Mr. Paulk and Mr. Hodges prepared and issued numerous subpoenas at the direction of private civilians. Such subpoenas violated Georgia law and Mr. Rehberg's constitutional civil rights.

37.     On October 22, 2003, a subpoena was issued under the letterhead of Kenneth B. Hodges, III, District Attorney to Bell South requiring the production of certain telephone records. On December 1, 2003, under the letterhead of Kenneth B. Hodges, III, District Attorney, another subpoena was issued to Bell South for certain telephone records. On January 20, 2004 another subpoena under the letterhead of Kenneth B. Hodges, III, District Attorney was issued to Bell South for certain telephone number records. On February 5, 2004, a subpoena for production of evidence was issued to Bell South Subpoena Compliance Center for telephone number (229) 888-9649, Mr. Rehberg's unlisted residential number. On February 24, 2004, a subpoena issued to Alltel requiring production of information of records concerning certain telephone numbers. Sprint long distance responded on January 27, 2004 to Mr. Paulk in response to a Subpoena (date unknown) for certain prepaid long distance calls originated by Mr. Rehberg. Mr. Paulk also prepared and issued a subpoena to Exact Advertising, the Internet service provider of one of Mr. Rehberg's email accounts, and obtained Mr. Rehberg's personal e-mails that were sent and received from his personal computer.

38.     On the dates set forth in the numerous subpoenas for appearance, the Dougherty County Grand Jury was not meeting to consider the case of the <u>State vs. Charles Rehberg, John Bagnato, and Jim Bowman</u>.  The case against Mr. Rehberg was not presented to the Dougherty County Grand Jury until December 14, 2005.  Mr. Paulk has now admitted that at the time he prepared and issued the subpoenas, "[t]here was not [a Grand Jury] impaneled. There was not one impaneled at the time." (Paulk Dep. p. 82).

39.     The subpoenas ostensibly required the persons to whom they were directed to appear before Dougherty County Grand Jury.  The recipients of these subpoenas were never required to appear before a Grand Jury but were directed by the District Attorney's office to turn the subpoenaed records over to that office.

40.     Upon receipt of the subpoenaed records, Mr. Paulk provided the records, including Mr. Rehberg's personal e-mails, to private civilians, who in turn paid for the information. The subpoenas were never intended to require an appearance before the Grand Jury on any matter pending before a Grand Jury, but were intended only to abuse the subpoena powers to obtain confidential and private records for private civilians.

41.     The Georgia Supreme Court has long recognized the "liberty of privacy" guaranteed by the Georgia Constitution.  Investigators are not entitled to exercise indiscriminate subpoena power as an investigative substitute for the procedural devices otherwise available in the criminal context.

42.     In this case Mr. Paulk and Mr. Hodges, acting as investigators months before any Grand Jury proceeding had been convened, invaded the privacy of numerous citizens,

without any pending indictment or case, as a fishing expedition and discovery device, neither of which are allowed under Georgia law. The subpoenas were not employed to produce evidence which was relevant to a pending case. Rather, the subpoenas were abused to produce information to benefit private civilians who paid to obtain the subpoenaed information.

43.     The abuse of subpoena powers to gather information for private civilians here, where there is no case pending, nor indictment before a Grand Jury, is not allowed under Georgia statutes and is prohibited by the Constitutions of Georgia and the United States.

44.     A district attorney is the only person authorized to represent the State in a criminal proceeding. The Constitution of Georgia, Article VI, Section VIII, Paragraph I, O.C.G.A. §15-18-6. Private special prosecutors are not allowed. Uniform Superior Court Rule 42.1. In violation of these laws, the subpoenas were issued illegally by Mr. Paulk and Mr. Hodges at the direction of private investigators working for private civilians.

45.     In violation of Georgia law, Mr. Paulk conducted the investigation at the direction of and in cooperation with civilian private investigators. Although Mr. Paulk admitted that private civilians directed the substance of the subpoenas and Mr. Paulk followed their directions, Mr. Paulk claims he told the private investigators, "You guys, you do the leg work and report back to me." (Paulk Dep. p. 35). Yet when the private investigators prepared reports and gave them to Mr. Paulk, he never bothered to read them. (Paulk Dep. p. 71). "I've seen them but I never read through them." *Id*.

13

46.     After subpoenaing numerous documents without any Grand Jury proceedings, Mr.
Paulk, in exchange for payment, provided the documents to the same private
investigators.    When Mr. McKinley learned of Mr. Paulk's actions, he told him,
"That's BS. We can't do that." (McKinley Dep. p. 32). "That's wrong. We cannot
give the information that's subpoenaed under our power. We…that's not right."
(McKinley Dep. p. 33).

47.     When asked whether it was a common practice for his office to give documents
subpoenaed for a Grand Jury to private civilians, Mr. Paulk answered, "I didn't give it
to them. They had to pay for it." (Paulk Dep. pp. 30-31).   "They paid to see what we
had. That's how I would phrase it." *Id.* at 86.

48.     Mr. Paulk also violated O.C.G.A. § 16-10-3 which prohibits state offices or
employees from receiving private or corporate funds to be used in the enforcement of
the penal laws.  Mr. McKinley also confirmed that it was "wrongful conduct" for Mr.
Paulk to accept payment for the subpoenaed documents. (McKinley Dep. p. 38).
When asked if he was familiar with the statute which prohibits a law enforcement
agency from receiving money for an investigation, Mr. Paulk answered, "I did not at
the time, but I do now." (Paulk Dep. p. 85).

49.     Rather than deposit and record the funds received illegally in payment for the
subpoenaed information, in most instances the District Attorney's office instructed
the benefactors of the information to make their payments directly to BellSouth and
other subpoenaed parties.  By structuring the transactions in this manner, debts of the
District Attorney's office were paid by the benefactors, without creating an obvious
audit trail of the illegal receipts.

50.     Mr. Paulk is not entitled to official immunity because his conduct violated numerous ministerial duties.  He did not have discretion to violate Georgia statutes or Mr. Rehberg's constitutional civil rights.

51.     Mr. Rehberg also recently learned that a clerk in the Dougherty County Tax Office ran his Motor Vehicle Report and provided it to the same private investigators. This release of documents by a Dougherty County clerk violates state and federal law. This action is further evidence of Dougherty County employees illegally providing information and documents regarding Mr. Rehberg to private civilians.

52.     Mr. Rehberg and Phoebe Putney Health System, Inc., a/k/a Phoebe Putney Health Systems, Inc., Phoebe Putney Memorial Hospital, Inc., Larry J. McCormick & Associates, LLC., Larry J. McCormick, and Stephen B. Chenoweth and Langley & Lee and C. Richard Langley have resolved their claims arising from these events. This Complaint does not raise any grievance or claim against such entities and individuals regarding the alleged conduct of such entities and individuals in the events described above.

53.     Mr. Hodges, Mr. Paulk, and Mr. Burke are not entitled to qualified immunity. With respect to the federal causes of action alleged in this Complaint, Mr. Hodges, Mr. Paulk, and Mr. Burke were not performing discretionary functions.   Moreover, their conduct violated clearly established constitutional rights of which a reasonable person would have known.

54.     A prosecutor's administrative duties and investigatory functions are not entitled to absolute immunity.  Mr. Hodges never served as the actual prosecutor of the charges against Mr. Rehberg before the Grand Jury. He publicly recused himself as the

prosecutor after unfavorable press coverage which questioned his alleged conflicts of interest from his relationships with Phoebe Putney Memorial Hospital. Yet Mr. Hodges remained Mr. Paulk's supervisor as Mr. Paulk continued the investigation and he was in communication with Mr. Burke concerning the evidence and charges against Mr. Rehberg prior to the Grand Jury proceedings.

55.     The actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. When a prosecutor performs the investigative functions normally performed by a detective or police officer, he is not entitled to absolute immunity.

56.     Mr. Rehberg's allegations against Mr. Hodges concern the period of time before the special Grand Jury was impaneled. Mr. Hodges' actions at that time were entirely investigative in character. Under Supreme Court precedent, a prosecutor is not an advocate before he has probable cause to have anyone arrested. Mr. Hodges was not acting as an advocate or prosecutor entitled to absolute immunity at the time of the events in question.

57.     That a Grand Jury was called to consider the evidence Mr. Hodges' work produced does not retroactively transform that work from the administrative into the prosecutorial. Mr. Hodges may not shield his investigative work with the aegis of absolute immunity merely because, after Mr. Rehberg was eventually arrested and indicted, that work may be retrospectively described as "preparation" for a possible trial. Under Supreme Court precedent, when the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.

58.     Likewise, Mr. Burke's statements to the media are not entitled to absolute immunity. Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor. At the press conference, Mr. Burke did not act in his role as advocate for the State. Conducting a press conference does not involve the initiation of a prosecution, the presentation of the State's case in court, or actions preparatory for these functions.

59.     Most public officials are entitled only to qualified immunity under federal law. Under this form of immunity, government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Mr. Hodges, Mr. Paulk, and Mr. Burke were not acting within the scope of their discretionary functions with respect to their misconduct described in this Complaint. Moreover, even if they were arguably performing discretionary functions, their conduct violated Mr. Rehberg's clearly established constitutional rights.

60.     Likewise, State immunities do not apply to suits brought under Section 1983. The Supreme Court has held that a state law which immunizes government conduct otherwise subject to suit under Section 1983 is preempted because the application of the state immunity law would thwart the congressional remedy.

17

## COUNT ONE AGAINST JAMES PAULK IN HIS INDIVIDUAL CAPACITY---
## NEGLIGENCE

61.     Plaintiff Charles Rehberg repeats and incorporates the allegations of Paragraphs 1

through 60 as if fully stated herein.

62.     In the performance of his ministerial duties in the investigation of Mr. Rehberg

and in his testimony before the Grand Jury, Mr. Paulk owed the duty to exercise due

care.

63.     Mr. Paulk's negligent performance of his ministerial duties include, but are not

limited to, the following:  (i) he prepared and issued subpoenas at the direction of

private civilians without any pending Grand Jury proceeding as represented in the

subpoenas, (ii) he investigated Mr. Rehberg in coordination and concert with private

civilians, (iii) he released subpoenaed documents to private civilians in exchange for

payment, and (iiii) on multiple occasions he attested to the truth of "facts" as a

complaining witness before a Grand Jury to which "facts" he had no knowledge and

concerning matters that he had never investigated.

64.     Mr. Paulk breached his duty of due care and committed negligence in the

performance of his ministerial duties. Such negligence proximately caused damages

to Mr. Rehberg for which Mr. Paulk is liable and for which Mr. Paulk is not immune.

## COUNT TWO AGAINST JAMES PAULK IN HIS INDIVIDUAL CAPACITY---
## NEGLIGENCE *PER SE*

65.     Mr. Rehberg repeats and incorporates the allegations of Paragraphs 1 through 60

as if fully stated herein.

66.     During the investigation of Mr. Rehberg and in the performance of his ministerial duties, Mr. Paulk committed negligence *per se*.

67.     Mr. Paulk's acts of negligence *per se* include, but are not limited to, the following:  (i) He prepared and issued subpoenas at the direction of private civilians without any pending Grand Jury proceeding as represented in the subpoenas, (ii) he investigated Mr. Rehberg in coordination and concert with private civilians, (iii) he released subpoenaed documents to private civilians in exchange for payment, and (iiii) he attested to the truth of facts as a complaining witness before a Grand Jury to which "facts" he had no knowledge and concerning matters that he had never investigated.

68.     Mr. Paulk committed negligence *per se* in the performance of his ministerial duties. Such negligence *per se* proximately caused damages to Mr. Rehberg for which Mr. Paulk is liable and for which Mr. Paulk is not immune.

69.     The abuse of subpoena powers to gather information for private civilians here, where there is no case pending, nor indictment before a Grand Jury, is not allowed under Georgia statutes and is prohibited by the Constitutions of Georgia and the United States.

70.     A district attorney is the only person authorized to represent the State in a criminal proceeding.  The Constitution of Georgia, Article VI, Section VIII, Paragraph I, O.C.G.A. §15-18-6.  Private special prosecutors are not allowed. Uniform Superior Court Rule 42.1. In violation of these laws, the subpoenas were issued illegally by Mr. Paulk and Mr. Hodges at the direction of private civilians.

71.　In violation of Georgia law, Mr. Paulk conducted the investigation at the direction and in cooperation with civilian private investigators.

72.　After subpoenaing numerous documents without any Grand Jury proceedings, Mr. Paulk gave the documents to the same private investigators.　When asked whether it was a common practice for his office to give documents subpoenaed for a Grand Jury to private civilians, Mr. Paulk answered, "I didn't give it to them. They had to pay for it." (Paulk Dep. pp. 30-31).　"They paid to see what we had. That's how I would phrase it." Id. at 86.

73.　Mr. Paulk violated O.C.G.A. §16-10-3 which prohibits state offices or employees from receiving private or corporate funds to be used in the enforcement of the penal laws.

74.　Mr. Paulk is not entitled to official immunity because his conduct violated numerous ministerial duties established by Georgia law.

### COUNT THREE AGAINST JAMES PAULK---TORT OF INVASION OF PRIVACY FOR CASTING MR. REHBERG IN A FALSE LIGHT

75.　Plaintiff Charles Rehberg repeats and incorporates the allegations of Paragraphs 1 through 74 above as if fully stated herein.

76.　The right of privacy is recognized in Georgia as a fundamental constitutional right, having a value essential to individual liberty in our society.

77.　Under Georgia law, the right of privacy protects individuals from publicity which places them in a false light.

78.　Due to Mr. Paulk's negligence in the performance of his ministerial duties, media publicity depicted Mr. Rehberg as something or someone which he is not. The false

light in which Mr. Rehberg was placed would be highly offensive to a reasonable person.

79. Publicity which places a plaintiff in a false light in the public eye is one of the four torts that make up the general tort of invasion of privacy under Georgia law.

80. Mr. Paulk's negligent performance of his ministerial duties was one of the proximate causes of the publicity which placed Mr. Rehberg in a false light as an accused criminal charged with burglary, aggravated assault, and simple assault.

81. During the winter, spring, and summer of 2006, due in part to Mr. Paulk's negligent performance of his ministerial duties, including attesting to false facts as the complainant before the Grand Jury, there was extensive publicity which associated Mr. Rehberg with having committed a burglary, aggravated assault, simple assault, and making harassing phone calls.

82. Due to the false light in which he was portrayed, Mr. Rehberg has suffered damages to his personal and professional reputation, medical problems, legal expenses, mental distress, and substantial diminished earning capacity and employment opportunities.

83. For the tort of invasion of privacy in casting Mr. Rehberg in a false light, Mr. Paulk is liable to Mr. Rehberg for all damages allowed by Georgia law.

## COUNT FOUR AGAINST DEFENDANT JAMES PAULK---TORT OF INVASION OF PRIVACY FOR ILLEGALLY INTRUDING INTO MR. REHBERG'S PRIVATE AFFAIRS

84. Plaintiff Charles Rehberg repeats and incorporates the allegations of Paragraphs 1 through 83 above as if fully stated herein.

85.     Under Georgia case law, the concept of invasion of privacy encompasses four loosely related but distinct torts, including intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

86.     In preparing and issuing illegal subpoenas to obtain Mr. Rehberg's private phone records and e-mails at the direction and for the benefit of private civilians, Mr. Paulk wrongfully intruded upon Mr. Rehberg's private affairs.

87.     Mr. Paulk's wrongful intrusion into Mr. Rehberg's private affairs caused damages to Mr. Rehberg.

88.     Mr. Paulk's wrongful intrusion into Mr. Rehberg's private affairs constitute a tort under Georgia law and a negligent violation of his ministerial duties for which he is liable to Mr. Rehberg for all damages allowed by law.

## COUNT FIVE AGAINST DOUGHERTY COUNTY----RESPONDEAT SUPERIOR FOR THE NEGLIGENCE AND TORTS COMMITTED BY ITS EMPLOYEE JAMES PAULK

89.     Plaintiff Charles Rehberg repeats and incorporates the allegations of Paragraphs 1 through 88 above as if fully stated herein.

90.     Defendant James Paulk committed the torts and acts of negligence described above in the course of his employment with Defendant Dougherty County.

91.     Defendant Dougherty County employed Defendant James Paulk at all times referenced in this Complaint.

92.     Dougherty County participated in hiring, training, supervising, and paying Mr. Paulk for his work as Chief Investigator throughout the period of time at issue in this lawsuit. Dougherty County also supplied Mr. Paulk's office, office supplies, and

administrative and secretarial support used in the investigation of Mr. Rehberg at issue in this Complaint

93.     Defendant Dougherty County paid the salary of Defendant James Paulk throughout the time period of the negligence and torts committed by Mr. Paulk which damaged Mr. Rehberg.

94.     On information and belief, Defendant Dougherty County has purchased commercial insurance which provides coverage for the negligent acts of Mr. Paulk and the personal injuries caused by his negligence and torts.

95.     Under the doctrine of respondeat superior, Defendant Dougherty County is liable for the negligence and torts of its employee James Paulk and the damages caused to Mr. Rehberg due to such negligence and torts.

**COUNT SIX AGAINST JAMES PAULK IN HIS INDIVIDUAL CAPACITY AND KEN HODGES IN HIS INDIVIDUAL CAPACITY ---VIOLATIONS OF 42 U.S.C. 1983 FOR MALICIOUS PROSECUTION, VIOLATIONS OF MR. REHBERG'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT, AND VIOLATIONS OF MR. REHBERG'S RIGHTS UNDER THE FOURTEENTH AMENDMENT**

96.     Mr. Rehberg repeats and incorporates the allegations of Paragraphs 1 through 60 as if fully stated herein.

97.     The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures. The United States Supreme Court has ruled that the Fourth Amendment is applicable to state governments by operation of the Fourteenth Amendment.

98.     Under binding Eleventh Circuit precedent, malicious prosecution is a violation of the Fourth Amendment and a viable constitutional tort cognizable under Section 1983.

99.     Acting as investigators, Mr. Paulk and Mr. Hodges instituted an investigation of Mr. Rehberg and then instigated criminal indictments of Mr. Rehberg with malice and without probable cause.

100.    At all times relevant to these allegations for violations of 42 U.S.C. § 1983, Mr. Hodges and Mr. Paulk acted under color of law.

101.    The criminal investigation, indictment, and prosecution of Mr. Rehberg were induced by fabricated evidence and bad faith.

102.    The indictments were dismissed in Mr. Rehberg's favor.

103.    The illegal indictments caused significant damages to Mr. Rehberg for which he is entitled to recover under Section 1983.

104.    Mr. Rehberg was arrested, booked, fingerprinted, and photographed as a criminal accused. The Fourth Amendment addresses "pretrial deprivations of liberty" and protects citizens such as Mr. Rehberg from unreasonable searches and seizures without probable cause.

105.    His arrest warrant is void under the Fourth Amendment because the testimony provided by Mr. Paulk supposedly supporting the warrant contains reckless disregard for the truth.  Mr. Paulk has admitted that he lacked "preparation and knowledge." He has admitted that he had no evidence that Mr. Rehberg had committed an aggravated assault, assault or burglary.

106.    A warrant affidavit or testimony violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit or testimony.  Such omissions occurred in this case.

107.    In this case, Mr. Paulk and Mr. Hodges, acting as investigators months before any Grand Jury proceeding had been convened, invaded the privacy of Mr. Rehberg, without any pending indictment or case, as a fishing expedition and discovery device for private civilians, neither of which are allowed under Georgia law. The subpoenas were not employed to produce evidence which was relevant to a pending case. Rather, the subpoenas were abused to produce information to benefit private civilians who paid to obtain the subpoenaed information for use in private civil litigation.

108.    The abuse of subpoena powers to gather information for private civilians here, where there is no case pending, nor indictment before a Grand Jury, is not allowed under the Fourth Amendment of the United States Constitution.

109.    There is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government.  Mr. Rehberg was subjected to criminal charges on the basis of false evidence that was deliberately fabricated.

110.    Simply obtaining an indictment does not insulate state actors from an action for malicious prosecution under Section 1983. In this case where indictments were obtained, the state actors are not insulated from Section 1983 liability because the finding of probable cause remained tainted by the malicious actions of the government officials.

111.    Nor is Mr. Paulk entitled to immunity.  When an officer knows, or has reason to know, that he has materially misled a Grand Jury on the basis for a finding of probable cause, as where a material omission is intended to enhance the support for a conclusion of probable cause, the shield of qualified immunity is lost.

112.    In the original indictment for aggravated assault and burglary, Mr. Paulk is listed as the complainant. Mr. Paulk has admitted that he was the only witness who served in such role before the Grand Jury in the original indictment for aggravated assault and burglary against Mr. Rehberg.

113.    Mr. Hodges knew or should have known that there was no probable cause to indict Mr. Rehberg on charges of aggravated assault and burglary, yet he directed Mr. Paulk to appear before the Grand Jury and to attest to the truth of such charges. Mr. Hodges is not entitled to absolute immunity for such actions. Mr. Hodges was not acting as a prosecutor or advocate for the state. He is not entitled to the protections of absolute immunity while functioning in such a capacity.

114.    The term "complaining witness" describes the persons who actively instigated or encouraged the prosecution of the plaintiff.  Both Mr. Paulk and Mr. Hodges actively instigated and encouraged the prosecution of Mr. Rehberg.

115.    The conduct of Mr. Hodges and Mr. Paulk violated clearly established statutory or constitutional rights of which a reasonable person would have known.

116.    For purposes of §1983 liability, the requisite causal chain can occur through the setting in motion of a series of acts by others which the actor knows or reasonably should know would cause constitutional violations.  Mr. Hodges and Mr. Paulk set a

series of acts in motion which they knew or reasonably should have known would cause violations of Mr. Rehberg's constitutional rights.

117.    Not only did Mr. Paulk and Mr. Hodges set the events in motion, but Mr. Paulk provided false testimony as the complaining witness to the Grand Jury.

118.    Mr. Hodges was Mr. Paulk's supervisor in the investigation of Mr. Rehberg. As a supervisor, Mr. Hodges is liable to Mr. Rehberg under Section 1983.  Mr. Hodges had actual or constructive knowledge that his subordinate, Mr. Paulk, was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Mr. Rehberg; Mr. Hodges' response to that knowledge was so inadequate as to show deliberate indifference or at least tacit authorization of the offensive practices; and there is an affirmative causal link between Mr. Hodges' actions and inactions and the particular constitutional injuries suffered by Mr. Rehberg.

119.    Mr. Hodges' and Mr. Paulk's violations of 42 U.S.C. § 1983 caused Mr. Rehberg to suffer personal injuries and damages for which they are liable.

120.    Under 42 U.S.C. § 1983, Mr. Hodges and Mr. Paulk are liable to Mr. Rehberg for all damages allowed by federal law.

## COUNT SEVEN AGAINST JAMES PAULK IN HIS INDIVIDUAL CAPACITY AND KEN HODGES IN HIS INDIVIDUAL CAPACITY---VIOLATIONS OF 42 U.S.C. § 1983 FOR INSTIGATING A RETALIATORY PROSECUTION

121.    Plaintiff Mr. Rehberg repeats and incorporates the allegations of Paragraphs 1 through 60 as if fully stated herein.

122.    Freedom of speech is one of the fundamental personal rights and liberties protected from governmental intrusion by the First and Fourteenth Amendments to the U.S. Constitution.

123.    Mr. Rehberg was charged with faxing documents which criticized the activities and financial management of a public entity.  Silencing one who is voicing concerns or criticism about a public entity's activities is an anathema to free speech.

124.    Chilling his political speech was a substantial or motivating factor in the wrongful conduct of Mr. Paulk and Mr. Hodges in investigating Mr. Rehberg, issuing illegal subpoenas, providing subpoenaed documents to private civilians, and instigating the wrongful indictments of Mr. Rehberg.

125.    As a general matter, the First Amendment  prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for engaging in constitutionally protected speech. Official reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right.

126.    A retaliatory prosecution action may properly be brought against a prosecutor for conduct taken in an investigatory capacity, to which absolute immunity does not extend.

127.    The Due Process Clause of the Fourteenth Amendment incorporates the limitations and protections of the First Amendment to also restrict the states.

128.    There was no probable cause for the underlying criminal charges against Mr. Rehberg and such charges would not have been brought if there was no retaliatory motive.

129.    After public criticisms of their illegal subpoenas and charges of political favoritism in instigating the investigation, Mr. Paulk and Mr. Hodges acted under color of law in retaliation and wrongfully influenced and instigated the prosecutorial decision to bring charges against Mr. Rehberg.  Mr. Hodges and Mr. Paulk also acted

in retaliation to Mr. Rehberg's criticisms of the activities and financial management of a public hospital to which Mr. Hodges and Mr. Paulk had close political connections and personal relationships.

130.     The retaliatory investigation and prosecution of Mr. Rehberg caused him to suffer significant personal injuries and economic damages.

131.     The retaliatory investigation and prosecution of Mr. Rehberg violated Mr. Rehberg's rights under the First Amendment and violated 42 U.S.C. § 1983. Defendants James Paulk and Ken Hodges are liable in their individual capacities to Mr. Rehberg for all damages allowed by law.

## COUNT EIGHT AGAINST KELLY BURKE IN HIS INDIVIDUAL CAPACITY---VIOLATIONS OF 42 U.S.C. § 1983

132.     Plaintiff Charles Rehberg repeats the allegations of Paragraphs 1 through 60 as if fully stated herein.

133.     After Mr. Hodges publicly recused himself from the investigation of Mr. Rehberg, Mr. Burke was appointed to participate in the investigation at Mr. Hodges' request of the Georgia Attorney General's office.

134.     During the investigation of Mr. Rehberg before any Grand Jury had been impaneled and before Mr. Burke was acting in his role as advocate for the State, Mr. Burke participated in fabricating evidence that Mr. Rehberg had committed an aggravated assault and burglary.   There is no evidence that Mr. Rehberg ever committed a burglary or aggravated assault on anybody, yet Mr. Burke in his investigation participated in fabricating such evidence.

135.    Mr. Burke then called Mr. Paulk to testify on short notice as the complaining

witness before the Grand Jury and attest to the truth of the charges that Mr. Rehberg

had committed a burglary and aggravated assault. Mr. Burke knew that he and Mr.

Paulk in conducting the investigation of Mr. Rehberg had not found any evidence that

Mr. Rehberg committed a burglary or aggravated assault. While Mr. Burke's

presentation of evidence to the Grand Jury may be entitled to absolute immunity as

the prosecutor, his role in investigating Mr. Rehberg and fabricating evidence of a

burglary and aggravated assault are not entitled to absolute immunity.

136.    Mr. Burke's role in fabricating such evidence that Mr. Rehberg had somehow

committed an aggravated assault and burglary violated Mr. Rehberg's constitutional

rights and violated 42 U.S.C. § 1983. Mr. Burke is not entitled to qualified immunity

because he violated Mr. Rehberg's established and clear constitutional rights.

137.    There is a clearly established constitutional due process right not to be subjected

to criminal charges on the basis of false evidence that was fabricated by the

government. Mr. Rehberg was subjected to criminal charges on the basis of false

evidence that was fabricated.

138.    The indictments of Mr. Rehberg were widely covered in the local and state press,

including the Albany Herald, WALB-TV, WFXL-TV, and the Atlanta Journal. Mr.

Burke conducted interviews with the press and also issued press statements in which

he addressed challenges by Mr. Rehberg's counsel and stated, "[I]t is never free

speech to assault or harass someone, no matter who they are and no matter how much

you don't like them." Mr. Burke represented to the public and the press that Mr.

Rehberg had committed an assault. Mr. Burke also publicly stated, "It would be

ludicrous to say that an individual has the right to go onto someone else's property and burn a cross under the guise of free speech, which is tantamount to what these defendants are claiming." Mr. Burke's statements were published in the press. Mr. Burke publicly indicated that Mr. Rehberg illegally went onto "someone else's property" and committed an assault.

139.    Despite the clear constitutional violations of Mr. Rehberg's civil rights discussed above, Mr. Burke publicly indicated that Mr. Rehberg had committed an assault and had trespassed or committed a burglary. Injury to an individual's reputation may be a component of damages awarded under 42 U.S.C. § 1983. Mr. Burke wrongfully damaged Mr. Rehberg's reputation for which he is liable under 42 U.S.C. § 1983.

140.    Moreover, under Supreme Court precedent, statements by a prosecutor such as Mr. Burke to the press are not entitled to absolute immunity.  Nor are Mr. Burke's statements to the media entitled to qualified immunity.

141.    Mr. Burke's violations of 42 U.S.C. §1983 caused Mr. Rehberg to suffer personal injuries and damages for which he is liable.

142.    Under 42 U.S.C. 1983, Mr. Burke is liable to Mr. Rehberg for all damages allowed by law.

### COUNT NINE AGAINST DEFENDANT DOUGHERTY COUNTY AND KEN HODGES IN HIS OFFICIAL CAPACITY AS DOUGHERTY COUNTY DISTRICT ATTORNEY----VIOLATIONS OF 42 U.S.C. 1983

143.    Plaintiff Mr. Rehberg repeats and incorporates the allegations of Paragraphs 1 through 60 as if fully stated herein.

144. A municipality or county or state may be held liable under § 1983 if the plaintiff shows that a "custom" or "practice" of the government entity was a "moving force" behind the constitutional deprivation.

145. Under Supreme Court precedent, local governments may be sued for constitutional deprivations visited pursuant to government "custom" even though such a custom had not received formal approval through the body's official decision-making channels.

146. Liability may be based on a claim of inadequate training or supervision when a municipality's or county's or state's failure to train or supervise its employees in a relevant respect evidences a deliberate indifference to the rights of its inhabitants such that the failure to train or supervise can be properly thought of as a policy or custom that is actionable under § 1983.

147. The need for a particular type of training and supervision is obvious when employees face clear constitutional duties in recurrent situations even without prior incidents to place the municipality or county on notice. Such is the case here.

148. Dougherty County and the District Attorney's Office knew or should have known that (1) it was the common custom and practice of investigators to serve as complaining witnesses, and that (2) County investigators were doing so without adequate supervision, notice, preparation or knowledge.

149. Dougherty County and the District Attorney's Office knew or should have known of a need to supervise investigators and provide proper training regarding their legal and ethical responsibilities while serving as complaining witnesses in Grand Jury

proceedings, but made a deliberate choice not to provide such supervision and training, with deliberate indifference to the rights of the accused.

150.    In the original Grand Jury proceeding, only one witness testified: Mr. Paulk.  Mr. Paulk is listed as the "complainant" in the indictment against Mr. Rehberg. (Paulk Dep. pp. 19-20). Mr. Paulk admitted that he told the Grand Jury, "These are true and accurate facts based upon the indictment." Id. at p. 109.

151.    Yet Mr. Paulk has now admitted that he never interviewed any witnesses or gathered any evidence indicating that Mr. Rehberg committed any aggravated assault or burglary. (Paulk Dep. p. 111).  He has now admitted his "lack of knowledge and preparation." (Paulk Dep. p. 78).  He never even interviewed the supposed recipients of the anonymous faxes who were somehow "harassed." Id.

152.    Mr. Paulk has testified that it is "unfortunately" normal and common for him and other investigators employed by Dougherty County and working under the supervision of the District Attorney to testify without adequate notice, knowledge or preparation or personal knowledge of the facts being attested to as true.

153.    Mr. Paulk faced clear constitutional duties in recurrent situations of testifying before Grand Juries. Yet he received inadequate training and supervision to protect the constitutional rights of the accused when serving as the complaining witness.  In this case, Mr. Paulk testified before the Grand Jury on short notice without knowledge of any evidence indicating that Mr. Rehberg had committed any assault or burglary. Yet he attested to such charges as true.

154.    Mr. Paulk is an employee of Dougherty County. He was trained and supervised by both the County and the District Attorney.

155. The failure to adequately train and supervise Mr. Paulk when he faced clear constitutional duties in recurrent situations was a moving force in the violations of Mr. Rehberg's constitutional rights.

156. Under 42 U.S.C. 1983, Dougherty County and Ken Hodges in his Official Capacity as Dougherty County District Attorney are jointly and severally liable to Mr. Rehberg for the violations of his constitutional rights.

### COUNT TEN AGAINST KELLY BURKE IN HIS INDIVIDUAL CAPACITY, KEN HODGES IN HIS INDIVIDUAL CAPACITY, AND JIM PAULK IN HIS INDIVIDUAL CAPACITY----CONSPIRACY TO VIOLATE THE CONSTITUTIONAL RIGHTS OF CHARLES REHBERG AND SECTION 1983

157. Plaintiff Charles Rehberg repeats and incorporates the allegations of paragraphs 1 through 60 as if fully stated herein and repeats and incorporates the allegations contained in Counts Six, Seven, and Eight above as if fully stated herein.

158. During the investigation and in fabricating evidence that Mr. Rehberg committed a burglary and aggravated assault, Defendants Kelly Burke, Kenneth Hodges, and James Paulk attempted to accomplish an unlawful end by unlawful means.

159. Such Defendants engaged in conduct which constitutes a tort under federal law for violations of Mr. Rehberg's constitutional rights under the First Amendment, the Fourth Amendment, and the Fourteenth Amendment of the United States Constitution.

160. For acting in concert and engaging in a conspiracy to violate Mr. Rehberg's constitutional rights, these Defendants are liable to Mr. Rehberg under 42 U.S.C. § 1983 for all damages allowed by federal law.

161.   These Defendants' conduct evidences callous indifference to the federally protected rights of Mr. Rehberg, warranting an award of punitive damages under governing federal law.

WHEREFORE,    Plaintiff Charles Rehberg prays for all relief and damages as allowed by governing law under each Count of this Complaint, including compensatory damages, general damages, and punitive damages as allowed by law, attorneys' fees, and all costs of this action. Mr. Rehberg also respectfully requests such further legal and equitable relief as is proper under governing law.

**Jury trial is hereby demanded.**

This 23rd day of January, 2007.

VROON & CRONGEYER, LLP

By:    /s/ Bryan  A. Vroon
       Bryan A. Vroon
       bvroon@vclawfirm.com
       Georgia Bar No.  729086

By:    /s/ John W. Crongeyer
       John W. Crongeyer
       jcrongeyer@vclawfirm.com
       Georgia Bar No. 197267

1718 Peachtree Street, Suite 1088
Atlanta, Georgia  30309
Telephone:  (404) 607-6710
Facsimile (404) 607-6711

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| **CHARLES A. REHBERG,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **V.** | ) |
| | ) |
| **JAMES P. PAULK, IN HIS** | ) |
| **INDIVIDUAL CAPACITY;** | ) |
| **KENNETH B. HODGES, III, IN HIS** | ) |
| **INDIVIDUAL CAPACITY;** | )   **CIVIL ACTION FILE** |
| **KENNETH B. HODGES, III, IN HIS** | )   **NO._____** |
| **OFFICIAL CAPACITY AS** | ) |
| **DISTRICT ATTORNEY OF** | ) |
| **DOUGHERTY COUNTY;** | ) |
| **KELLY R. BURKE, IN HIS** | ) |
| **INDIVIDUAL CAPACITY, AND** | ) |
| **DOUGHERTY COUNTY,** | ) |
| | ) |
| **Defendants.** | ) |

## <u>VERIFICATION</u>

1.  Charles Rehberg personally appeared before the undersigned officer, duly authorized to administer oaths, who after being sworn, states under oath as follows:

2.  I am over the age of majority and competent to testify.

3.  I have read the Complaint in this matter. To the best of my knowledge, information, and belief formed after reasonable inquiry, the Complaint is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the acts forming the bases for the claims are not privileged communications under paragraph (4) of Code Section 51-5-7; and that the

claims are not interposed for any improper purpose such as to suppress a

person's or entity's right of free speech or right to petition government, or

to harass, or to cause unnecessary delay or needless increase in the cost of

litigation.


FURTHER AFFIANT SAYETH NOT:

Signed, sealed and delivered this 23 day
Of January, 2007 in the presence of:

_Sonia E. Brice_____

Notary Public

BY: _____
          Charles Rehberg


          [SEAL]


My Commission Expires: _March 27, 2010_

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| **CHARLES A. REHBERG,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **V.** | ) |
| | ) |
| **JAMES P. PAULK, IN HIS** | ) |
| **INDIVIDUAL CAPACITY;** | ) |
| **KENNETH B. HODGES, III, IN HIS** | ) |
| **INDIVIDUAL CAPACITY;** | )   **CIVIL ACTION FILE** |
| **KENNETH B. HODGES, III, IN HIS** | )   **NO._____** |
| **OFFICIAL CAPACITY AS** | ) |
| **DISTRICT ATTORNEY OF** | ) |
| **DOUGHERTY COUNTY;** | ) |
| **KELLY R. BURKE, IN HIS** | ) |
| **INDIVIDUAL CAPACITY, AND** | ) |
| **DOUGHERTY COUNTY** | ) |
| | ) |
| **Defendants.** | ) |

## <u>VERIFICATION</u>

1.  Bryan A. Vroon  personally appeared before the undersigned officer, duly
    authorized to administer oaths, who after being sworn, states under oath as
    follows:

2.  I am over the age of majority and competent to testify. I am counsel of
    record for Plaintiff Charles Rehberg in this matter. I am licensed to
    practice law in Georgia and have been licensed since 1987. The following
    facts are based on my personal knowledge.

3.  I have drafted and read the Complaint in this matter. To the best of my
    knowledge, information, and belief formed after reasonable inquiry, the
    Complaint is well grounded in fact and is warranted by existing law; that

the acts forming the bases for the claims are not privileged communications under paragraph (4) of Code Section 51-5-7; and that the claims are not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation.


FURTHER AFFIANT SAYETH NOT:

Signed, sealed and delivered this _____ day
Of January, 2007 in the presence of:

_____     BY:  s/ Bryan A. Vroon
Notary Public                                                          Bryan A. Vroon


      [SEAL]


My Commission Expires:  _____