IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

CHARLES A. REHBERG

V.

JAMES P. PAULK et al.

CIVIL ACTION NO.
1:2007CV00022

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS KENNETH B. HODGES III AND KELLY R. BURKE'S MOTION TO DISMISS

### I. INTRODUCTION

The Motion to Dismiss filed by Defendants Kenneth B. Hodges III and Kelly R. Burke urges error on the Court. The Brief filed by these Defendants does not advance the accurate application of law to the allegations in the Complaint. Under Supreme Court and Eleventh Circuit precedent, the Motion must be denied in its entirety.

Rule 12(b) (6) motions are highly disfavored. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1958). Plaintiff's allegations must be accepted as true. *Weatherman v. Tarrant Co. NICU*, 507 U.S. 162, 164 (1993). A district court may not dismiss a complaint unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *H.J. Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229, 249-250 (1989) (emphasis added). "All pleadings … [are to be] construed to do substantial justice." F.R.Civ.P. 8(f). "[A]t the pleading stage, general factual … allegations embrace those specific facts that are necessary to support the claim." *National Organization for Women v. Scheidler*, 510 U.S. 249, 256 (1994). Under Rule 12, the Court must focus on the sufficiency of the pleadings alone. Plaintiff has properly pleaded causes of action recognized under settled law. "By the plain terms of § 1983, two -- and only two -- allegations are required in order to state a cause of action under that statute." *Gomez v. Toledo*, 446 U.S.

635, 640 (1980). "First, the plaintiff must allege that some person has deprived him of a federal right." *Id.* "Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Id.* Defendants' Rule 12(b) (6) motion should be denied.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A.  UNDER SUPREME COURT PRECEDENT, HODGES AND BURKE ARE NOT ENTITLED TO ABSOLUTE IMMUNITY

"The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Antoine v. Byers & Anderson, Inc*., 508 U.S. 429, 432, 113 S. Ct. 2167, and n. 4 (1993). Defendants Hodges and Burke begin their Brief by arguing that they are entitled to absolute immunity "insofar as [their] activities were within the scope of their functions as prosecutors." (Defendants'Brief, p. 6). Defendants attempt to twist the allegations to argue that the "challenged activities are all prosecutorial in nature," yet the Complaint alleges otherwise.

The truth is that none of the allegations in the Complaint challenges Mr. Hodges' or Mr. Burke's functions as prosecutors. Rather, the allegations concern the actions of Mr. Hodges and Mr. Burke in handling the investigation of Mr. Rehberg as a political favor in retaliation for Mr. Rehberg's comments critical of the management of a public hospital, issuing illegal subpoenas for Mr. Rehberg's personal phone and e-mail data and then selling such information to private parties, fabricating false evidence against Mr. Rehberg, and publicizing such fabricated evidence in statements to the media.

Paragraph 12 of the Complaint confirms that Defendants Hodges, Burke, and Paulk "handled the investigation" of Mr. Rehberg. Paragraph 13 confirms that neither the "Albany Police Department nor any other agencies were ever involved in any investigation of this

alleged assault or burglary." The investigation was handled exclusively by Defendants Paulk, Hodges, and Burke. The Chief Investigator, Mr. Paulk, testified that he and Mr. Hodges handled the investigation of Mr. Rehberg supposedly because "of lack of confidence in the City police department to handle it." (Complaint Par. 14). Mr. Paulk testified, "There's [sic] a lot of problems with the Albany Police Department, lack of credibility in their work product." (Complaint Par. 14).

Within that investigation Mr. Paulk, Mr. Hodges, and Mr. Burke fabricated evidence that Mr. Rehberg somehow committed a burglary and aggravated assault. There was never even any citizen complaint against Mr. Rehberg for committing a burglary or aggravated assault. There was never any witness who claimed that Mr. Rehberg committed any assault or burglary.

The Complaint repeatedly alleges misconduct in the investigation of Mr. Rehberg. Mr. Rehberg was the "subject of an extensive illegal investigation conducted as a political favor." (Complaint Par. 29). "In the investigation of Mr. Rehberg, Mr. Paulk and Mr. Hodges prepared and issued numerous subpoenas at the direction of private civilians. Such subpoenas violated Georgia law and Mr. Rehberg's constitutional civil rights." (Complaint Par. 36). "In this case Mr. Paulk and Mr. Hodges, acting as investigators months before any Grand Jury proceeding had been convened, invaded the privacy of numerous citizens, without any pending indictment or case, as a fishing expedition and discovery device, neither of which are allowed under Georgia law." (Complaint Par. 42). "The subpoenas were not employed to produce evidence which was relevant to a pending case. Rather, the subpoenas were abused to produce information to benefit private civilians who paid to obtain the subpoenaed information." *Id.*

The Complaint confirms that Mr. Hodges "never served as the actual prosecutor of the charges against Mr. Rehberg before the Grand Jury." (Complaint Par. 54). The

Complaint further confirms that Mr. Rehberg's allegations against Mr. Hodges "concern the period of time before the special Grand Jury was impaneled." (Complaint Par. 56). "Mr. Hodges' actions at that time were entirely investigative in character." *Id.* Likewise, the Complaint alleges that 'before any Grand Jury had been impaneled and before Mr. Burke was acting in his role as advocate for the State, Mr. Burke participated in fabricating evidence that Mr. Rehberg had committed an aggravated assault and burglary." (Complaint Par. 134).

The United States Supreme Court has repeatedly held that prosecutors are not entitled to absolute immunity when performing investigative functions. "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1999).[1] Mr. Hodges and Mr. Burke performed the investigative functions normally performed by a police officer or detective. And they handled, directed and controlled this so-called "investigation" with the purpose of fabricating evidence against Mr. Rehberg as a political favor and in retaliation for his comments protected by the First Amendment.[2]

The Supreme Court has further held that when a district attorney acts as an investigator before a grand jury is impaneled, then the district attorney is not acting as an advocate for the state and is not entitled to absolute immunity. "A careful examination of the allegations concerning the conduct of the prosecutors during the period before they convened a special grand jury to investigate the crime provides the answer." *Buckley v. Fitzsimmons*,

---

[1] "Although absolutely immune for actions taken as an advocate, the prosecutor has only qualified immunity when performing a function that is not associated with his role as an advocate for the state." *Jones v. Cannon*, 174 F. 3d 1271, 1281-1282 (11th Cir. 1999).

[2] After Mr. Hodges recused himself from the investigation due to an article published in the Atlanta Journal which raised questions about his conflicts of interest, Mr. Burke was appointed to replace him. Nevertheless, the evidence will show that Mr. Hodges remained involved in the investigation even after his public recusal.

509 U.S. at 274. "The prosecutors do not contend that they had probable cause to arrest petitioner or to initiate judicial proceedings during that period." *Id*. "Their mission at that time was entirely investigative in character." *Id*.   "A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id*.

Just as in the *Buckley* case, Hodges' and Burke's unconstitutional misconduct predominantly occurred before a special grand jury was impaneled on December 14, 2005. (Complaint Par. 38).   As held by the Supreme Court, "[u]nder these circumstances, the prosecutors' conduct occurred well before they could properly claim to be acting as advocates." *Id.* at 275. "It therefore remains protected only by qualified immunity." *Id.*

In *Buckley,* the Supreme Court further held that "A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial." *Buckley*, 509 U.S. at 276.   "When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same." *Id.*

Defendants Hodges and Burke have failed to address or mention this controlling Supreme Court precedent cited above. They have also failed to mention dozens of federal decisions finding that prosecutors are not entitled to absolute immunity when performing investigative functions.

The Complaint also asserts claims against Mr. Burke arising from his press releases and media statements after Mr. Rehberg was indicted on false evidence. Paragraph 139 of the Complaint alleges, "Despite the clear constitutional violations of Mr. Rehberg's civil rights discussed above, Mr. Burke publicly indicated that Mr. Rehberg had committed an assault

5

and had trespassed or committed a burglary." (Complaint Par. 139). Mr. Burke's statements

to the media are likewise not entitled to absolute immunity. The Supreme Court has ruled,

"Comments to the media have no functional tie to the judicial process just because they are

made by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 (1993). "The conduct of a

press conference does not involve the initiation of a prosecution, the presentation of the

state's case in court, or actions preparatory for these functions." *Id.* at 278. Such media

statements are only protected by qualified immunity and, as discussed below, the Complaint

adequately states a claim for which Mr. Burke is not entitled to demand qualified immunity at

this stage when the allegations of the Complaint must be accepted as true.

### B.  PLAINTIFF'S CLAIMS ARE NOT BARRED BY STATUTE OF LIMITATIONS

Defendants next argue that Mr. Rehberg's claims "which might be characterized as

investigatory or administrative" are barred by the two year statute of limitations. Defendants

focus on the dates that Mr. Hodges issued secret and illegal subpoenas to seize Mr. Rehberg's

personal phone records and e-mail messages. The subpoenas violated Mr. Rehberg's rights

under the Fourth Amendment. (Complaint Par. 107).  Although the subpoenas required

witnesses to appear with documents before a supposed "grand jury," no grand jury was ever

impaneled until months or years later on December 14, 2005.  The subpoenas themselves

were a fraudulent violation of the Fourth Amendment's protections against unreasonable

searches.  While issuing these fraudulent and illegal subpoenas in secret, Defendants demand

that the statute of limitations must have expired before Mr. Rehberg had any opportunity to

know or learn that his personal phone and e-mail records had been illegally searched. That is

not the law.

More importantly, a critical allegation in this case is the fabrication of false evidence

against Mr. Rehberg which somehow implicated him in an alleged assault and burglary. That

fabrication occurred in the investigation handled by Defendants Paulk, Burke and Hodges. That fabrication occurred prior to the date of the first grand jury being impaneled on December 14, 2005 and that fabrication continued through the date of the third grand jury being impaneled on March 1, 2006.  Mr. Rehberg did not have any opportunity to learn the source of the fabricated false "evidence" against him until months later when Mr. Paulk was deposed in August of 2006. (Complaint Par. 15).

"The general federal rule is that the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996).  A Section 1983 cause of action accrues, and the statute of limitations begins to run, when a plaintiff knows or has reason to know: (1) "that he has been injured;" and (2) "who has inflicted the injury." *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003). Federal law determines when the statute of limitations begins to run; generally, "the statute of limitations does not begin to run until the facts that would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003).

As alleged in the Complaint, the facts that would support a cause of action became apparent or should have been apparent to Mr. Rehberg only in the months after he was first indicted on December 14, 2005.  Prior to that time, he had no way of knowing of the illegal subpoenas and fabricated false "evidence" implicating him in a supposed burglary and assault. At a minimum, there are substantial issues of fact for discovery.

Defendants' Brief suffers from confused miscalculations in dates also. Defendants at one point claim, "Also barred, are any claims occurring before January 23, 2005." The Defendants then state, "These claims include anything related to the first indictment which

was alleged to have occurred on December 15, 2005." (Defendants' Brief, p. 8). Defendants mistakenly argue from the assumption that December 15, 2005 occurred before January 23, 2005.

Then Defendants on the next page argue that "all the investigation related to the crimes occurred prior to the first indictment and the first indictment was terminated in Plaintiff's favor more than two years prior to the filing of the complaint…" (Defendants' Brief, p. 9). Defendants need to read the Complaint. The first indictment was terminated in Mr. Rehberg's favor on February 2, 2006. (Complaint Par. 21). Mr. Rehberg filed this Complaint 11 months later on January 23, 2007.  Apart from the clear allegations in the Complaint, the Defendants know when the first indictment was terminated. Mr. Burke himself dismissed the indictment before the scheduled hearing on February 2, 2006. (See Complaint Par. 21).  Defendants' confusion is baffling and would only lead the Court into reversible error if followed.

Defendants do concede that "a malicious prosecution claim does not become ripe until an action is terminated in Plaintiff's favor…"  (Defendants Brief, p. 8). To state a cause of action for malicious prosecution, a plaintiff must allege and prove that the criminal proceeding that gives rise to the action has terminated in favor of the accused. See *Kelly v. Serna*, 87 F.3d [1235] at 1240-41; *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 2371, 129 L. Ed. 2d 383 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."). *Wood v. Kessler*, 323 F.3d 872, 882 (11th Cir. 2003); *Uboh v. Reno*, 141 F. 3d 1000, 1004 (11th Cir. 1998).

The first indictment was not terminated in Mr. Rehberg's favor until February 2, 2006. (Complaint Par. 21). The second indictment was terminated in Mr. Rehberg's favor on July 7, 2006. (Complaint Par. 24, 27). The third indictment was terminated in Mr. Rehberg's

favor on May 1, 2006. (Complaint Par. 26). Mr. Rehberg filed this action within 11 months of the first indictment being dismissed, within 7 months of the second indictment being dismissed, and within 9 months of the third indictment being dismissed.

Nevertheless, Defendants attempt to argue that the "claims related to the alleged faulty investigation are directly akin to a claim for false arrest thus making the statute run upon the determination of probable cause." (Defendants' Brief, p. 8). Defendants cite *Wallace v. Kato*, 127 S. Ct. 1091 (2007). In *Wallace*, the Supreme Court held, "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages." In *Wallace*, the Supreme Court ruled "that the statute of limitations on petitioner's Section 1983 claim [for false imprisonment] commenced to run when he appeared before the examining magistrate and was bound over for trial." "Since more than two years elapsed between that date and the filing of this suit -- even leaving out of the count the period before he reached his majority -- the action was time barred." Thus, the statute began to run when the plaintiff in *Wallace* was first arrested.

In the case at bar, Mr. Rehberg was first indicted and thus damaged on December 14, 2005. He was first arrested and fingerprinted on December 15, 2005. Under the Supreme Court's reasoning in *Wallace*, the statute of limitations began to run on December 14, 2005 when Mr. Rehberg was first indicted. Mr. Rehberg filed this action approximately 13 months later in January, 2007, well before a two-year statute of limitations expired.

Defendants also appear to argue that any claim for malicious prosecution "would necessarily be tied to their responsibilities as advocates for the state and they would be entitled to absolute immunity." (Defendants' Brief, p. 9). This is another erroneous argument. Mr. Hodges never served as an "advocate for the state" in the prosecution of Mr. Rehberg. Rather he participated in the illegal and unconstitutional investigation of Mr. Rehberg, the

unconstitutional search of Mr. Rehberg's personal e-mail and phone records for the benefit of private parties, and the fabrication of false "evidence" of an alleged assault and burglary against Mr. Rehberg. Likewise, Mr. Burke participated in fabricating false evidence against Mr. Rehberg during the investigation prior to the time that Mr. Burke was acting as an advocate for the state. (*See* Complaint Par. 133, 134).

### C. PLAINTIFF HAS STATED VALID CLAIMS ARISING IN PART FROM MR. BURKE'S STATEMENTS TO THE PRESS

Defendants correctly argue that "injury to reputation, by itself, does not constitute a deprivation of a liberty or property interest protected under the Fourteenth Amendment." (Defendants' Brief, p. 10). The key term is "by itself" and the Defendants attempt to gloss over this important modifying term without disclosing the full holdings of the Supreme Court. Allegations of injury to reputation alone do not support a section 1983 claim for violation of due process, and therefore must be accompanied by a constitutionally recognized injury. *Paul v. Davis*, 424 U.S. 693, 712, 96 S. Ct. 1155, 1165-66, 47 L. Ed. 2d 405 (1976). This rule, labeled the "stigma-plus" standard, requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation. *Id.* at 712, 96 S. Ct. at 1165-66. The allegations against Mr. Burke meet this standard.

The Complaint alleges that during the investigation, Mr. Burke "participated in fabricating evidence that Mr. Rehberg had committed an assault and burglary." (Complaint Par. 134). "[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government. " *Devereaux v. Abbey*, 263 F.3d 1070, 1074-1075 (9th Cir. 2001). "Using or planting evidence false evidence in an effort to obtain a conviction violates the Constitution." *Jones v. Cannon*, 174 F. 3d 1271, 1289 (11th Cir. 1999) (citing Napue v. Illinois, 36 U.S. 264,

268-270, 79 S. Ct. 1173 (1959)). The Eleventh Circuit has held that it is well established that "fabricating incriminating evidence violated constitutional rights." *Riley v. City of Montgomery, Ala.*, 104 F. 3d 1247, 1253 (11th Cir. 1997). Likewise, Count Ten of the Complaint alleges a conspiracy by Mr. Burke, Mr. Hodges, and Mr. Paulk to violate Mr. Rehberg's "constitutional rights under the First Amendment, the Fourth Amendment, and the Fourteenth Amendment of the United States Constitution." (Complaint Par. 159).  The Supreme Court and the Eleventh Circuit's predecessor have recognized that a conspiracy to violate constitutional rights states a claim under § 1983. *Dennis v. Sparks*, 449 U.S. 24, 29, 101 S. Ct. 183, 187 (1980); *Adickes v. Kress & Co*., 398 U.S. 144, 152, 90 S. Ct. 1598, 1605-06 (1970); *Crowe v. Lucas,* 595 F.2d 985, 990 (5th Cir. 1979).

After participating in an investigation and conspiracy to fabricate false evidence against Mr. Rehberg in violation of the First Amendment, Fourth Amendment, and Fourteenth Amendment, Mr. Burke publicized such "evidence" to the media. The "stigma-plus" standard of *Paul v. Davis* has been met.

Defendants' discussion about Mr. Rehberg's diminished employment opportunities is irrelevant to the inquiry under Supreme Court precedent which "requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest in addition to damaging the plaintiff's reputation." Mr. Rehberg's allegations satisfy this standard.

### D.  THE COMPLAINT STATES A CLAIM FOR NEGLIGENT SUPERVISION AND TRAINING

Defendants know that the Complaint does not attempt to state a 1983 claim against Mr. Hodges based on *respondeat superior*.  Such a claim is not permitted and was never asserted in the Complaint. Defendants claim that there is "no allegation of personal participation in the alleged deprivation of any rights by the Defendants." (Defendants' Brief,

pp. 13-14).  This argument ignores 27 paragraphs in the Complaint which assert specific allegations against Mr. Hodges based on his personal participation in the misconduct at issue. The Complaint contains extensive allegations that Mr. Hodges personally participated in the violations of Mr. Rehberg's constitutional rights.  ( See Complaint Paragraphs 12, 14, 18, 19, 36, 37, 42, 54, 56, 57, 99, 101, 107, 108, 109, 113, 114, 115, 117, 118, 119, 124, 129, 130, 131, 158, 159).

Defendants also ignore Supreme Court precedent subjecting government employers such as the District Attorney and Dougherty County to liability.  A municipality may be held liable under § 1983 if the plaintiff shows that a "custom" or "policy" of the municipality was the "moving force" behind the constitutional deprivation. *Monell v. Department of Social Services of New York*, 436 U.S. 658, 690-94, 98 S. Ct. 2018, 2035-38, 56 L. Ed. 2d 611 (1978). Because a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, a plaintiff may prove a municipal policy by showing that "the municipality's failure to train evidenced a deliberate indifference to the rights of its inhabitants." *Id*. 98 S. Ct. at 2035-2036. To establish deliberate indifference, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.* (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).  Plaintiff may meet this burden in one of two ways. First, "the need for more or better training may be obvious where a pattern of constitutional violations exists such that the municipality knows or should know that corrective measures are needed." *Young v. City of Augusta, Ga*., 59 F.3d 1160, 1172 (11th Cir. 1995). Second, the need for a particular type of training may be obvious where municipal employees face clear constitutional duties in recurrent situations even without prior incidents to place the municipality on notice. *Young*, 59 F.3d at 1172.

12

Under this governing law, Count Ten of the Complaint provides detailed allegations which state a claim of liability against Dougherty County and the District Attorney in his Official Capacity. (*See* Complaint Paragraphs 149-156). Defendants' Motion ignores these allegations.

### E. PLAINTIFF HAS SUFFICIENTLY STATED A CLAIM FOR CONSPIRACY

Defendants next argue that Count 10 of the Complaint fails to allege a valid claim for conspiracy. Defendants again urge error on the Court.

First, Defendants claim that under *Elder v. Athens-Clark County*, 54 F. 3d 694 (11th Cir. 1995), "so long as the prosecutor is acting within the scope of his authority as prosecutor, the mere contention of 'conspiracy' does not dilute the manner of his immunity." (Defendants' Brief, p. 14). This argument ignores the essence of the Complaint which is that Mr. Hodges and Mr. Burke acted as investigators and fabricated false evidence against Mr. Rehberg as a political favor. Fabricating false evidence constitutes conduct outside the scope of a prosecutor's authority.

Defendants next argue that the Complaint fails to state a claim for conspiracy because "Plaintiff only sets forth the vaguest of allegations of a 'conspiracy' without any factual basis to support these contentions." (Defendants' Brief, p. 16). This argument is difficult to fathom when reviewing the Complaint.

Count 10 of the Complaint incorporates Paragraphs 1 through 60 of the Complaint and Counts Six, Seven, and Eight of the Complaint. (Complaint Par. 157). The Complaint contains extensive and detailed allegations based in large part on sworn deposition testimony which is cited and quoted in the Complaint. The Defendants' suggestion that the Complaint sets forth "the vaguest of allegations of a 'conspiracy'" lacks credibility.

Defendants' argument that Rule 8 of the Federal Rules of Civil Procedure requires even more specificity than alleged in the Complaint contradicts Supreme Court and Eleventh Circuit precedent. In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160 (1993), the Supreme Court held that a federal court may not apply a "'heightened pleading standard'----more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure---in civil rights cases alleging municipal liability under Rev. Stat. 1979, 42 U.S.C. 1983." 507 U.S. at 164.  The Supreme Court held that "Rule 8 (a) (2) requires that a complaint include only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. at 168.  The Supreme Court noted that in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957), "we said in effect that the Rule meant what it said."

> The Federal Rules of Civil Procedure do not require a claimant to set  out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what he plaintiff's claim is and the grounds upon which it rests.

> 507 U.S. at 168 (quoting *Conley v. Gibson*, 355 U.S. at  47).

In *Leatherman*, the Supreme Court only addressed 1983 claims against municipalities and had "no occasion to consider whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." 507 U.S. at 166-167.

One District Court in this Circuit has questioned whether *Leatherman* overrules any heightened pleading requirement in 1983 actions.[3]   Nevertheless, a heightened pleading

---

[3] "However, as this court explained in *Helton v. Hawkins*, 12 F. Supp. 2d 1276, 1280-1281 (M.D. Ala. 1998) (Thompson, J.), it is unclear whether the Eleventh Circuit § 1983 pleading standard is still constitutional. The Supreme Court has indicated that the role of the courts is not to fashion heightened requirements. *See Crawford-El v. Britton*, 523 U.S. 574, 118 S. Ct. 1584, 1595, 140 L. Ed. 2d 759 (1998)." *Shows v. Morgan*, 40 F. Supp. 2d 1345, 1357-58 (M.D. Ala. 1999).

14

requirement is the law of this Circuit in Section 1983 suits "against individuals to whom qualified immunity is available." *Swann v. Southern Health Partners*, 388 F. 3d 834, 838 (11th Cir. 2004).

Under the "heightened pleading standard," a Section 1983 plaintiff need only "allege with some specificity the facts which make out his claim." *Id.* at 838 (quoting *GJR Investments, Inc. v. County of Escambia*, 132 F. 3d 1359, 1367 (11th Cir. 1998). "Some factual detail in the pleadings is necessary to the adjudication of 1983 claims." *Id.*

The Complaint in this case provides extensive quotes to sworn deposition testimony. The Complaint certainly provides "some factual detail." Defendants do not attempt to move for a more definite statement.  Nor do they challenge the sufficiency of the factual details alleged in the Complaint. They only challenge the sufficiency of the conspiracy allegations apparently because the Complaint does not use the magic word "agreement" or "understanding."

The lead decision cited by Defendants is *NAACP v. Hunt*, 491 F. 2d 1555, 1563 (11th Cir. 1990). That decision addresses the plaintiff's burden of proof at the summary judgment stage. "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights." *Id.*

Defendants cite one other decision, *Strength v. Hubert*, 854 F. 2d 421, 425 (11th Cir. 1988), in purported support of its argument that Plaintiff must plead the word "understanding" or "agreement." The *Strength* decision also addressed the evidentiary requirement to prove an "understanding" at the summary judgment stage.  The holdings in *Hunt* and *Strength* are irrelevant to the issue at hand which is whether Mr. Rehberg has provided "some factual detail" of a conspiracy. This case is not at the summary judgment stage and Defendants may make summary judgment arguments at a later date after discovery.

Moreover, any reasonable construction of the allegations in this Complaint would lead to the conclusion that Hodges, Paulk, and Burke acted in "agreement" with the purpose of conducting an illegal investigation and fabricating false evidence as a political favor to private civilians who were offended by Mr. Rehberg's opinions about the management of a public hospital. After alleging extensive factual details of their personal participation in the misconduct at issue, the Complaint states that Burke, Hodges, and Paulk together "attempted to accomplish an unlawful end by unlawful means" and acted "in concert" to violate Mr. Rehberg's constitutional rights. (Complaint Paragraphs 158-160).   In "concert" means "agreement in design or plan." Webster's Ninth Collegiate Dictionary, p. 272 (1988).

### F.  THE COMPLAINT STATES CLAIMS FOR WHICH DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants' final argument is that they are "shielded by qualified immunity." Qualified immunity is an affirmative defense. *Gomez v. Toledo*, 446 U.S. 635 (1980).  Rule 8 (c) of the Federal Rules of Civil Procedure requires affirmative defenses such as qualified immunity to be raised in an answer. The Supreme Court has held, "We refuse to change the Federal Rules governing pleading by requiring the plaintiff to anticipate the immunity defense." *Crawford-El v. Britton*, 118 S. Ct. 1584, 1595 (1998).

In Motions under Rule 12 (b) (6), courts have decided two issues: (1) whether the allegations state a claim and (2) whether the law allegedly violated was "clearly established" at the time of the alleged violations. If the law was not clearly established when the officials acted, qualified immunity bars an award of damages, but it does not preclude the granting of injunctive relief. *Behren v. Pelletier*, 116 S. Ct. 834, 842 (1996).

After reciting general law regarding qualified immunity, Defendants' Brief contains two sentences in which they summarily conclude that prosecutors have "wide latitude" and

therefore Hodges and Burke did not violate any "clearly established" law. This argument is frivolous in view of the allegations at issue which must be accepted as true at this stage.

First, prosecutors of course do not have latitude to fabricate false evidence as alleged in the Complaint. "[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v. Abbey*, 263 F.3d 1070, 1074-1075 (9th Cir. 2001). "Using or planting evidence false evidence in an effort to obtain a conviction violates the Constitution." *Jones v. Cannon*, 174 F. 3d 1271, 1289 (11th Cir. 1999) (citing *Napue v. Illinois,* 36 U.S. 264, 268-270, 79 S. Ct. 1173 (1959)). The Eleventh Circuit has held that it is well established that "fabricating incriminating evidence violated constitutional rights." *Riley v. City of Montgomery, Ala.*, 104 F. 3d 1247, 1253 (11th Cir. 1997). The Complaint alleges that Defendants Hodges and Burke, in their capacities as investigators, participated in fabricating false "evidence" of an alleged assault and burglary against Mr. Rehberg.

Second, prosecutors of course do not have latitude to issue subpoenas for the appearance of witnesses and the production of documents before a grand jury when no grand jury has even been impaneled and do not have latitude to order and conduct investigations as political favors or to aid private parties in searching for documents in exchange for payment. (Complaint Paragraphs 97-120). "The Fourth Amendment which protects against unreasonable searches and seizures has been held to limit the scope of administrative subpoenas." *Major League Baseball v. Crist*, 331 F.3d 1177, 1182 (11th Cir. 2003) (citing *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208-211, 66 S. Ct. 494, 505-07 (1946)). The abusive and corrupt use of subpoenas to obtain Mr. Rehberg's private phone records and e-mail messages in an effort to aid private parties for payment as alleged in the Complaint obviously violates the Fourth Amendment.

Third, prosecutors of course have no latitude to pursue illegal investigations and fabricate false "evidence" in retaliation for the accused exercising his First Amendment rights of freedom of speech. (Complaint Paragraphs 121-131). "Freedom of speech is one of the fundamental personal rights and liberties protected from governmental intrusion by the First and Fourteenth Amendments to the U.S. Constitution" (*Cunningham v. State*, 260 Ga. 827, 400 S.E. 2d 916 (1991)) and the Bill of Rights contained in Georgia's Constitution. 1983 Ga. Const., Art. I, § I, Par. V." *McKenzie v State*, 626 S.E.2d 77 (2005).  Official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right," *Crawford-El v. Britton*, 523 U.S. 574, 588, n. 10, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998), and the law is settled that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. *Id.* at 592, 118 S. Ct. 1584; *see also Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694 (1972) (noting that the government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech").

Silencing or punishing a citizen who is voicing concerns or criticisms about a public entity's activities is an anathema to free speech.  To establish that his First Amendment rights were violated, a plaintiff must prove that chilling his political speech was a substantial or motivating factor in the defendants' wrongful conduct. *Sloman v. Tadlock*, 21 F.3d 1462, 1469-70 (9th Cir. 1994). The Complaint contains extensive specific allegations that Defendant Hodges instigated an investigation, issued illegal and unconstitutional subpoenas, participated in fabricating false evidence of an alleged burglary and assault, and wrongfully instigated and influenced the decision to bring false charges against Mr. Rehberg----all in retaliation for Mr. Rehberg's faxing documents which criticized the financial management of a public entity. (*See* Complaint Paragraphs 121-131).

18

Fourth, after all the constitutional violations alleged above, Mr. Rehberg was arrested, fingerprinted, and booked as a criminal accused. That arrest constitutes an unreasonable seizure in violation of the Fourth Amendment. (*See* Complaint Paragraphs 97-120). The arrest warrant itself is void and violates the Fourth Amendment because it is based on false "evidence" fabricated by Hodges, Burke, and Paulk in their so-called "investigation." (Complaint Par. 105); *see Dahl v. Holley*, 312 F. 3d 1228, 1235 (11th Cir. 2002).

Assuming the allegations of the Complaint are true which the Court must at this stage, Mr. Hodges and Mr. Burke violated Mr. Rehberg's clearly established rights under the First Amendment, Fourth Amendment, and Fourteenth Amendment and the Complaint should not be dismissed based on qualified immunity. The qualified immunity defense must fail because "a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

The finding of supposed "probable cause" to indict Mr. Rehberg does not exonerate the Constitutional violations.[4] Nor may Defendants Hodges or Burke attempt to insulate themselves from the outcome and consequent damages from their actions.[5] The individuals

---

[4] In *Hand v. Gary*, 838 F.2d 1420, 1426 (5th Cir. 1988), the Fifth Circuit examined the question whether state actors could assert immunity from liability for malicious prosecution simply because an indictment was obtained, regardless of the circumstances surrounding its return. The *Hand* court concluded that a finding of probable cause that is "tainted by the malicious actions of the government officials" does not preclude a claim against the officials involved. *Id.* "Simply obtaining an indictment is not enough to insulate state actors from an action for malicious prosecution under § 1983." *Hand v. Gary*, 838 F.2d 1420, 1426 (5th Cir. 1988). "Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, as where a material omission is intended to enhance the contents of the affidavit as support for a conclusion of probable cause, the shield of qualified immunity is lost." *Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir. 1991).

[5] Mr. Rehberg was the subject of an extensive illegal investigation conducted as a political favor; he was indicted three times, arrested, and was forced to pay significant attorneys' fees

who set all these events in motion were Hodges, Burke, and Paulk.[6]  They should now face

accountability in accordance with federal law.

### III. CONCLUSION

Defendants' Motion to Dismiss should have not been filed.  The Motion repeatedly

urges error on the Court. Plaintiff respectfully requests an expedited ruling so that discovery

may proceed to address the constitutional violations at issue in this case and Defendants may

no longer hide behind a cloak of immunity which clearly does not apply to the allegations

before the Court and the evidence which will be before a jury.

This 30th day of April, 2007.

VROON & CRONGEYER, LLP


By:      /s/ Bryan  A. Vroon
         Bryan A. Vroon
         bvroon@vclawfirm.com
         Georgia Bar No.  729086


By:      /s/ John W. Crongeyer
         John W. Crongeyer
         jcrongeyer@vclawfirm.com
         Georgia Bar No. 197267

---

to defend himself; he was charged with two felonies punishable up to 40 years in prison; he
was traumatized by the fear of going to prison for the rest of his life expectancy, and leaving
his wife and two young daughters; he suffered medical problems from the stress of the
indictments; he was subjected to extensive publicity in the media where he was identified as
being charged with multiple felonies and misdemeanors; and he was publicly identified in
press statements by the acting District Attorney as having committed an assault and burglary.
The damage of three indictments on his public record will remain with him and his wife and
children for the rest of their lives. (Complaint Par. 29).

[6] *Johnson v. Duffy*, 588 F. 2d 740, 743-744 (9th Cir. 1978) (For purposes of § 1983 liability
the requisite causal chain can occur through the "setting in motion [of] a series of acts by
others which the actor knows or reasonably should know would cause others to inflict the
constitutional injury.").

1718 Peachtree Street, Suite 1088
Atlanta, Georgia  30309
Telephone:  (404) 607-6710
Facsimile (404) 607-6711

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS KENNETH B. HODGES III AND KELLY R. BURKE'S MOTION TO DISMISS to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants. Counsel of record are listed below.

> John C. Jones
> Michelle J. Hirsch
> Freeman Mathis & Gary, LLP
> 100 Galleria Parkway
> Suite 1600
> Atlanta Georgia 30339
>
> Devon Orland
> 40 Capitol Square SW
> Atlanta Ga. 30334-1300

This 30th of April, 2007.

/s/ Bryan  A. Vroon
Bryan A. Vroon
bvroon@vclawfirm.com
Georgia Bar No.  729086

1718 Peachtree Street, Suite 1088
Atlanta, Georgia  30309
Telephone:  (404) 607-6710
Facsimile (404) 607-6711