**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

CHARLES A. REHBERG,                    :
                                       :
              Plaintiff,               :
                                       :
vs.                                    :            1:07-CV-22 (WLS)
                                       :
JAMES P. PAULK, in his individual      :
capacity, *et al.*,                    :
                                       :
              Defendants.              :
_____:

## ORDER

Presently pending before the Court are Defendants Burke and Hodges's Motion to Dismiss, Defendants Paulk and Dougherty County's Motion to Dismiss, and Defendant Dougherty County's Second Supplemental Motion to Dismiss. (Docs. 5, 6, 20).

For the reasons below, Defendants Burke and Hodges's Motion to Dismiss (Doc. 5) is **DENIED**; Defendants Paulk and Dougherty County's Motion to Dismiss (Doc. 6) is **GRANTED-IN-PART, DENIED-IN-PART**; and Defendant Dougherty County's Second Supplemental Motion to Dismiss (Doc. 20) is **DENIED as MOOT**.

## BACKGROUND

Based upon the facts alleged in the Complaint (Doc. 1), as set forth in relevant part below, Plaintiff filed this suit against Defendants for violations of 42 U.S.C. § 1983 and Georgia state law.

1

## FACTS[1]

On October 22, 2003, a subpoena was issued under the letterhead of Kenneth B. Hodges, III, District Attorney to Bell South requiring the production of certain telephone records. On December 1, 2003, another subpoena was issued, under the letterhead of Defendant Hodges, District Attorney, to Bell South for certain telephone records. On January 20, 2004 another subpoena was issued, also on Defendant Hodges's letterhead, to Bell South for certain telephone number records. On February 5, 2004, a subpoena for production of evidence was issued to Bell South Subpoena Compliance Center relating to Plaintiff's unlisted residential number. On February 24, 2004, a subpoena was issued to Alltel requiring production of information of records concerning certain telephone numbers. Sprint long distance responded on January 27, 2004 to Defendant Paulk in response to a Subpoena (date unknown) for certain prepaid long distance calls originated by Plaintiff. Defendant Paulk also prepared and issued a subpoena to Exact Advertising, the Internet service provider of one of Plaintiff's email accounts, and obtained Plaintiff's personal e-mails (sent and received from his personal computer).

On the dates set forth in the numerous subpoenas for appearance, the Dougherty County Grand Jury was not meeting to consider the case of the State vs. Charles Rehberg, John Bagnato, and Jim Bowman. The case against Plaintiff was not presented to the Dougherty County Grand Jury until December 14, 2005. Defendant Paulk has now admitted that at the time he prepared and issued the subpoenas, "[t]here was not [a Grand Jury] impaneled." Upon receipt of the subpoenaed records, Defendant Paulk provided the records, including Plaintiff's personal e-mails, to private civilians,

---

[1] The facts set forth below are gleaned from Plaintiff's Complaint (Doc. 1), because in consideration of a motion to dismiss, the Court must accept all of Plaintiff's well pleaded allegations as true. *See infra* pp. 5-6.

who in turn paid for the information.  The subpoenas were never intended to require an appearance before the Grand Jury on any matter pending  before a Grand Jury, but were intended to obtain confidential and private records for private civilians.

On December 14, 2005, Charles Rehberg was indicted on charges of aggravated assault, burglary and "harassing telephone calls" in Dougherty County.  The allegations in the indictment arose from Plaintiff's alleged interactions with a Dr. James Hotz (the victim).  However, the charges against Mr. Rehberg were false.  Plaintiff has never been to the home of Dr. Hotz.  There is no evidence that Plaintiff committed a burglary or aggravated assault on anybody as he was charged.  Neither the Albany Police Department nor any other police agencies were ever involved in any investigation of this alleged assault or burglary. Defendant Paulk, the Chief Investigator to the District Attorney in the case, testified that he and Mr. Hodges initiated and handled the investigation of Plaintiff supposedly because "of lack of confidence in the City police department to handle it." Defendant Paulk testified before the grand jury as the complaining witness and verified to the grand jury that his testimony consisted of "true and accurate facts based upon the indictment."  Yet, Defendant Paulk has now admitted that he never interviewed any witnesses or gathered any evidence indicating that Plaintiff committed any aggravated assault or burglary.

Based on the investigation conducted by Defendants Paulk, Hodges, and Burke, there was no probable cause to indict Plaintiff on charges of burglary, aggravated assault or "harassing" phone calls.  The three indictments of Plaintiff were widely covered in the local and state press, including the Albany Herald, WALB-TV, WFXL-TV, and the Atlanta Journal.  Defendant Burke conducted interviews with the press and also issued press statements in which he addressed challenges by Plaintiff's counsel and stated, "[I]t is never free speech to assault or harass someone, no matter who

3

they are and no matter how much you don't like them." Defendant Burke represented to the public and the press that Plaintiff had committed an assault. Defendant Burke also publicly stated, "It would be ludicrous to say that an individual has the right to go onto someone else's property and burn a cross under the guise of free speech, which is tantamount to what these defendants are claiming."

Plaintiff's counsel filed pleadings attacking the legal sufficiency of the first indictment and a hearing was scheduled by the presiding judge. On February 2, 2006, Assistant District Attorney Kelly Burke dismissed and *nol-prossed* the entire indictment prior to the scheduled hearing, thus terminating the First Indictment.  Defendants Burke and Paulk appeared before a second Grand Jury on or about February 15, 2006, and another indictment was issued February 16, 2006. The second Indictment included charges of "simple assault" and five counts of "harassing telephone calls." Defendant Paulk again appeared as a state witness along with Dr. Hotz.  At that time, Plaintiff still had never been to Dr. Hotz's home.  There was still no evidence that Plaintiff committed an assault on anybody as he was charged.  Plaintiff's counsel filed a motion attacking the legal sufficiency of the Second Indictment and the presiding judge scheduled a hearing. At a pretrial hearing held on April 10, 2006, Defendant Burke announced in open court that the Second Indictment was, or would immediately be dismissed. However, Defendant Burke failed to dismiss the Indictment. As a result, on July 7, 2006, as requested by Plaintiff's counsel, the Court dismissed the Second Indictment by Order of the Court, pursuant to the Defendant Burke's announcement made on April 10, 2006, thus terminating the Second Indictment.

Defendants Burke and Paulk appeared before a third Grand Jury on March 1, 2006 and secured a Third Indictment; again charging Plaintiff with "simple assault" and "harassing telephone calls." Plaintiff's counsel once again filed pleadings attacking the legal sufficiency of the pleadings

and the presiding judge scheduled a hearing. On May 1, 2006, Judge Harry Altman issued two orders

dismissing all charges against Plaintiff.

## DISCUSSION

Each Defendant, through the three motions to dismiss pending before the Court, moves to

dismiss Plaintiff's Complaint as to all counts.  Defendants rely on Federal Rule of Civil Procedure

12, which provides in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim,
> counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive
> pleading thereto if one is required, except that the following defenses may at the
> option of the pleader be made by motion . . . (6) failure to state a claim upon which
> relief can be granted . . . .

Fed. R. Civ. P. 12(b)(6).  A motion to dismiss a plaintiff's complaint, or a portion thereof, under

Federal Rule of Civil Procedure 12(b)(6) should not be granted unless Plaintiff fails to plead enough

facts to state a claim to relief that is plausible[, and not merely just conceivable,] on its face.  Bell

Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  "While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." (Citation omitted).  *Id.* at

1964-65 (citing Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th

Cir. 1994)).  Accordingly, "[a]t the motion to dismiss stage, all well-pleaded facts are accepted as

true, and the reasonable inferences therefrom are construed in the light most favorable to the

plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999).  Finally, the

"threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to

state a claim is . . . exceedingly low."  Ancata v. Prison Health Servs. Inc., 769 F.2d 700, 703 (11th

Cir. 1985) (quotation and citation omitted).  The Court will address each motion to dismiss in turn.

**I.    DEFENDANTS HODGES AND BURKE'S MOTION TO DISMISS (Doc. 5)**

Counts six, seven, eight, nine, and ten of Plaintiff's Complaint allege wrongful conduct by Defendants Hodges and/or Burke.  Count VI alleges a Section 1983 claim against Defendant Hodges in his individual capacity, along with Defendant Paulk, for violating Plaintiff's rights under the Fourth and Fourteenth Amendments. Count VII alleges a Section 1983 claim against Defendant Hodges in his individual capacity, along with Defendant Paulk, for instigating a retaliatory prosecution.  Count VIII alleges a Section 1983 claim against Defendant Burke in his individual capacity.  Count IX alleges a Section 1983 claim against Defendant Hodges in his official capacity and Defendant Dougherty County.  Finally, Count X alleges a conspiracy to violate Section 1983 and the constitutional rights of Plaintiff by Defendants Burke, Hodges, and Paulk in their individual capacities.

Defendants Hodges and Burke move to dismiss Plaintiff's Complaint on six separate grounds.  First, Defendants argue that Plaintiff's § 1983 claims are barred by the two year statute of limitations.  Second, Defendants contend that they are entitled to absolute immunity from Plaintiff's claims.  Third, Defendant Burke contends that damage to one's reputation is not actionable under Section 1983.  Fourth, Defendant Hodges argues that Plaintiff cannot support his claim of negligent supervision under a theory of respondeat superior alone.  Fifth, Defendants contend that Plaintiff has not alleged a valid claim for conspiracy.  Finally, Defendants argue that where all else fails, they are entitled to qualified immunity.

**A. Statute of Limitations**

Pursuant to O.C.G.A. § 9-3-33:

Actions for injuries to the person shall be brought within two years after the right of action accrues, except for injuries to the reputation, which shall be brought within one year after the right of action accrues, and except for actions for injuries to the person involving loss of consortium, which shall be brought within four years after the right of action accrues.

Although Georgia law provides the applicable statute of limitations for Plaintiff's claims, Mullinax v. McElhenney, 817 F.2d 711 (11th Cir. 1987) (citing Wilson v. Garcia, 471 U.S. 261, 269 (1985)), federal law determines when the same began to accrue. *Id*. "In Section 1983 cases, the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id*. (citing Calhoun v. Ala. Alcoholic Beverage Control Bd., 705 F.2d 422, 425 (11th Cir. 1983)).  Stated more simply, the statute of limitations for a Section 1983 action does not begin to accrue until (1) a plaintiff knows or has reason to know that he has been injured and (2) is aware or should have been aware of who injured him. *Id*.  A cause of action for malicious prosecution does not arise until the criminal proceeding that gives rise to such a claim is terminated in favor of the accused. Heck v. Humphrey, 512 U.S. 477, 484 (1994).

Defendants argue that Plaintiff's allegations are barred by the two year statute of limitations because the allegedly unlawful subpoenas were issued from approximately October 22, 2003 to February, 24, 2004–with February 2004 being more than two years prior to the January 2007 filing of Plaintiff's Complaint.  Defendants also argue, confusingly, that any claims for action(s) which occurred before January 23, 2005 are barred by the statute of limitations.  Finally, Defendants contend, incorrectly, that the first indictment in this case was "terminated in the Plaintiff's favor"

more than two years before the filing of his Complaint.

Despite Defendants' arguments to the contrary, Plaintiff's claims against them are not barred by the statute of limitations specified in O.C.G.A. § 9-3-33. First, the initial indictment against Plaintiff was issued on December 14, 2005. The Court finds, as argued by Plaintiff, that merely because subpoenas were issued as early October 2003, it does not necessarily follow that Plaintiff would have immediately become aware of the illegality of the same. At a minimum on December 14, 2005, Plaintiff, proceeding as an indicted Defendant, had the ability to use the criminal discovery process to discover certain information surrounding the issuance of the allegedly unlawful subpoenas. Therefore, the statute of limitations for Plaintiff's causes of action relating to actions involving the investigation and instigation of the prosecutions against him did not begin to accrue until after the first indictment was issued against Plaintiff. At this time Plaintiff should have known the investigation, including the issuance of the subpoenas, was allegedly unlawful. Additionally, the first indictment was terminated in Plaintiff's favor on February 2, 2006[2], officially making any cause of action for malicious prosecution ripe for review anytime thereafter. Because the statute of limitation on Plaintiff's causes of action began to accrue on December 15, 2005 and February 2, 2006, Plaintiff's Complaint was timely filed on January 23, 2007.

### B. Absolute Immunity

Prosecutors are immune from suit for damages under Section 1983 for "initiating a prosecution and in presenting the State's case." Imbler v. Pachtman, 424 U.S.409, 431 (1976). A prosecutor's duties "in his role as advocate for the State involve actions preliminary to the initiation

---

[2]    As noted by Plaintiff, it is quite unclear why Defendants argue "the first indictment was terminated in the Plaintiff's favor more than two years prior to the filing of this complaint."

of a prosecution and actions apart from the courtroom, and are nonetheless entitled to absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273-74 (1993) (citing Imbler, 424 U.S. at 431). However, any such actions by a prosecutor must include legal evaluation "of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id*. Significantly, "[t]here is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" *Id.* (citing Hampton v. Chicago, 484 F.2d 602, 608 (7th Cir. 1973), cert. denied, 415 U.S. 917, (1974)). Therefore, if a prosecutor assumes the investigative roll, usually reserved for police officers, the prosecutor "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction." *Id*.

Defendants argue that the actions complained of in Plaintiff's Complaint "directly related to seeking indictments, the presentation of evidence to the grand-jury, the choice of witnesses to present the grand-jury, and decisions as to whether to dismiss indictments." Defendants contend that since these actions are prosecutorial in nature, they are entitled to absolute immunity under Imbler.

The Court rejects Defendants' conclusion. It is true, as conceded by Plaintiff, that some of the actions listed above by Defendants are included within the Complaint. Therefore, consistent with Imbler and Buckley Defendants would be immune from a Section 1983 damages suit for the same. However, Plaintiff's Complaint includes multiple allegations that Defendants Hodges and Burke

9

fabricated criminal charges against Plaintiff before any Grand Jury was ever impaneled. Plaintiff's allegation is essentially that all Defendants in concerted action assumed the investigatory role of police officers. Accordingly, absolute immunity to suit cannot apply where Plaintiff's Complaint alleges actions by Defendants that fall outside the role of State's advocate. *See* Buckley, 509 U.S. at 276-78 (holding that prosecutor was not acting as an advocate when he held a press conference or allegedly fabricated evidence).

### C. Damage to Reputation

The protections of the Due Process Clause, guaranteeing, *inter alia*, the right to procedural due process, only apply where interests within the Fourteenth Amendment's protection of liberty and property apply. Behrens v. Regier, 422 F.3d 1255, 1259 (11th Cir. 2005) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972)). Injury to one's reputation alone does not constitute deprivation of a liberty or property interest protected by the Fourteenth Amendment. McCray v. Howard, 285 Fed.Appx. 689, **4 (llth Cir. 2008) (citing Paul v. Davis, 424 U.S. 693, 701-02, 712 (1976)). Therefore, a plaintiff alleging injury to his or her reputation must "establish more than a mere defamation claim." *Id*. This requirement is the "Stigma-plus" test from Paul. *Id*.; *see* Paul, 424 U.S. at 701-702, 712. Specifically, a plaintiff must show damage to an interest protected by the Fourteenth Amendment in addition to the related injury to one's reputation. *Id*.

Defendant Burke argues simply that the allegations included in Count VIII of Plaintiff's Complaint, alleging injury to Plaintiff's reputation caused by Defendant Burke's statements to the media, are insufficient to establish a claim under Section 1983.

As noted by Plaintiff, Counts VII and X allege that Defendant Burke "participated in fabricating evidence" and that Defendant Burke along with Defendants Hodges and Paulk conspired,

among other things, to do the same.  It is well established in the Eleventh Circuit that "fabricating

incriminating evidence violate[s] constitutional rights." Riley v. City of Montgomery, Ala., 104 F.3d

1247, 1253 (11th Cir. 1997) (citing Schneider v. Estelle, 552 F.2d 593, 595 (5th Cir. 1977)).

Plaintiff alleges that Defendant Burke made the following statements: (1) "it is never free speech to

assault or harass someone, no matter how much you don't like them[;]" and (2) "It would be

ludicrous to say an individual has the right to go to someone else's property and burn a cross under

the guise of free speech, which is tantamount to what these defendants are claiming."  These

statements, if made, clearly relate to the alleged Fourteenth Amendment violation alleged by

Plaintiff, i.e., violation of his right to be free from prosecution based upon false evidence/charges.

Therefore, Plaintiff's allegations are sufficient to satisfy the Paul "Stigma-plus" standard.

### D.  Negligent Supervision

A Section 1983 claim cannot be maintained based upon a theory of respondeat superior. See,

e.g., Amnesty Intern. v. Battle, --- F.3d ----, 2009 WL 425050, *6 (11th Cir. 2009).

Defendant Hodges argues that a claim under Section 1983 cannot be maintained on the basis

that a defendant is responsible under a theory of respondeat superior for the actions of another

person. Defendant contends that Plaintiff must show that "the named defendant actually participated

in the alleged constitutional violation, or exercised control or direction over the alleged violation."

Additionally, Defendant argues that Plaintiff has not put forth sufficient allegations to show that

constitutional violations were widespread.

Consistent with the legal standard espoused by Defendant Hodges, Plaintiff's Complaint,

taken as true, is replete with allegations that Defendant personally participated in the alleged

violations of Plaintiff's constitutional rights and/or exercised control or direction over Defendants

11

Paulk and Burke to achieve said violations.  Plaintiff also argues that the allegations included within his Complaint establish a claim of deliberate indifference in violation of Section 1983.  Finally, contrary to Defendant Hodges's characterization that the alleged constutional violations were not widespread, Plaintiff alleges that "Mr. Paulk has testified that it is 'unfortunately' **normal and common** for him and other investigators employed by Dougherty County and working under the supervision of the District Attorney to testify without adequate knowledge or preparation or personal knowledge of the facts being attested to as true."  (Doc. 1, ¶ 18) (emphasis added).  Therefore, Plaintiff's claims against Defendant Hodges are not merely based upon a theory of respondeat superior.

### E. Conspiracy

In the Eleventh Circuit, a heightened pleading standard is required for Section 1983 claims against defendants for whom qualified immunity is available as a defense.  Swann v. Southern Health Partners, 388 F.3d 834, 838 (11th Cir. 2004); *but see* Shows v. Morgan, 40 F. Supp. 2d 1345, 1357-58 (M.D. Ala. 1999) ("[I]t is unclear whether the Eleventh Circuit § 1983 pleading standard is still constitutional").  A plaintiff making such a claim must "allege with some specificity facts which make out its claim."  GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).  In Fullman v. Graddick, the Eleventh Circuit held:

> In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.  In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.

739 F.2d 553, 556-57 (11th Cir. 1984).

Defendants first reiterate their claim that they are entitled to absolute immunity because they were acting within the scope of their authority as prosecutors; therefore, a claim of conspiracy will not dilute their immunity. Next, Defendants argue that Plaintiff's conspiracy claim is vague and conclusory.

Contrary to Defendants' contention, Plaintiff's conspiracy count (Count X) is well pleaded and satisfies the heightened pleading requirement of the Eleventh Circuit. Count X of Plaintiff's Complaint "repeats and incorporates the allegations of paragraphs 1 through 60" of Plaintiff's Complaint. Paragraphs 1 through 60 set forth detailed allegations of the wrongful conduct Plaintiff alleges and Count X of Plaintiff's Complaint explicitly alleges that the facts described in paragraphs 1 through 60 establish that Defendants Paulk, Burke, and Hodges acted in "concert" and "engag[ed] in a conspiracy." Defendant appears to contend that Plaintiff must use the word "agreement" specifically in his Complaint to proceed with a conspiracy claim. This is not so. As noted by Defendants, "[i]n conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged." Fullman, 739 F.2d at 556-57. Plaintiff's detailed allegations and conspiracy count (Count X) more than satisfy this requirement.

### F. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Amnesty Int'l, USA, 2009 WL 425030 (citing Pearson v. Callahan, 129 S.Ct. 808, 815 (2009)). The Supreme Court has developed a two step analysis for use by courts to determine whether a defendant is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001). First, the Court determines whether the Complaint, with

Plaintiff's well-pleaded allegations accepted as true, alleges a violation of a constitutional right. Amnesty Int'l, USA, 2009 WL 425030. Second, if the Court finds that a constitutional right was violated, the Court must determine if these rights were "clearly established." *Id*. Although this two-step inquiry is no longer mandatory, the Court thinks it remains appropriate in this case. *See id*.

Defendant argues quite loosely that any purported violations of constitutional rights caused by their actions was not clearly established and a reasonable official in their position would not have had a "fair and clear" warning. To support this proposition Defendants argue that prosecutors are traditionally given "great latitude;" therefore, reasonable prosecutors would not have expected the actions alleged in this case to run afoul of the Constitution.

As noted above, Plaintiff's Complaint is replete with allegations of fabrication of evidence and improper instigation of criminal charges, e.g., issuance of fraudulent and illegal subpoenas. "[F]abricating incriminating evidence violate[s] constitutional rights." Riley, 104 F.3d at 1253. Furthermore, "[i]t was well established [as far back as] 1989 that fabricating incriminating evidence violated constitutional rights," *id.*–thus it was certainly well established that the same was constitutionally impermissible during the time frame of Plaintiff's allegations. The evidence obtained in and of itself was not fake or fabricated. It was the fake representation to the Grand Jury that the evidence supported the charges which themselves were not true as to Plaintiff. Defendants' Motion to Dismiss based on qualified immunity is **DENIED**.

Based on the above analysis, *see supra* Parts I.A.-F., Defendants' Motion to Dismiss (Doc. 5) is **DENIED**.

## II.    DEFENDANTS PAULK AND DOUGHERTY COUNTY'S MOTION TO DISMISS (Doc. 6)

Counts one, two, three, four, six, seven and ten allege wrongful conduct by Defendant Paulk, while Counts five and nine allege wrongful conduct by Defendant Dougherty County.  Count I claims negligence on the part of Defendant Paulk.  Count II claims negligence *per se* on the part of Defendant Paulk.  Count III alleges that Defendant Paulk committed the tort of invasion of privacy by casting Plaintiff in a false light.  Count IV alleges that Defendant Paulk committed the tort of invasion of privacy by intruding into Plaintiff's private affairs.  Count V alleges a respondeat superior claim against Defendant Dougherty County for the negligence and torts committed by its employee, Defendant Paulk.  Count VI alleges a Section 1983 claim against Defendant Paulk for malicious prosecution.  Count VII alleges a Section 1983 claim against Defendant Paulk for instigating a retaliatory prosecution.  Count IX alleges a <u>Monell</u> policy claim against Defendant Dougherty County pursuant to Section 1983.  Finally, Count X alleges a conspiracy to violate Section 1983 and the constitutional rights of Plaintiff by Defendants Burke, Hodges, and Paulk in their individual capacities.

Defendants Paulk and Dougherty County proffer seven grounds for dismissal of Plaintiff's claims against them.  First, Defendants argue that Plaintiff's claims are barred by the applicable two year statute of limitations.  Second, Defendant Paulk contends that he is entitled to absolute immunity for any claims arising from his testimony before the grand jury.  Third,  Defendant Paulk argues that Plaintiff's conspiracy claim must fail because the "Intracoporate Conspiracy Doctrine" applies in this case and, notwithstanding the same, Plaintiff fails to state a claim for conspiracy.  Fourth, Defendant Paulk argues that he is entitled to qualified immunity.  Fifth, Defendant Paulk

contends that he is entitled to official immunity as to Plaintiff's state law claims. Sixth, Defendant Dougherty County argues that Plaintiff's <u>Monell</u> policy claim must fail because it had no authority over Defendant Paulk. And finally, Defendant Dougherty County argues that it is entitled to Sovereign Immunity from Plaintiff's state law claims.

### A. Statute of Limitations

Defendants Paulk and Dougherty County proffer the same argues concerning the applicable statute of limitations as Defendants Burke and Hodges. *Compare* (Doc. 5, Part III.B.) *with* (Doc. 6, Part III.B.). Therefore, Defendants Paulk and Dougherty County's arguments concerning the applicable statute of limitations fail for the same reasons that Defendants Burke and Hodges's arguments failed. *See supra* Part I.A.

### B. Absolute Immunity

Government officials enjoy absolute immunity from Section 1983 suits for Grand jury testimony, even if the same was false. <u>Jones v. Cannon</u>, 174 F.3d 1271, 1286 (11th Cir. 1999). However, government officials may be liable for action taken prior to testifying before the grand jury in limited circumstances. *See* <u>Mastroianni v. Bowers</u>, 173 F.3d 1363, 1366-67 (11th Cir. 1999). The Eleventh Circuit has not resolved whether an exception to absolute immunity applies where the government official testifying before the grand jury is the complaining witness. <u>Mastroianni</u>, 173 F.3d at 1366 or 67 n. 1 (refusing to address whether an exception to absolute immunity would exist where the government official is the "complaining witness"); *but see* <u>Jones</u>, 174 F.3d at 1288 n. 10 (expressly rejecting an exception to the doctrine of absolute immunity even if the government

official is the complaining witness).[3]

Defendant Paulk argues that under <u>Mastroianni</u> he cannot be held liable for his grand jury testimony, even if false. Defendant also contends that he cannot be held liable for any action leading up to the grand jury testimony because the doctrine of absolute immunity extends to all claims arising out of his grand jury testimony.

Defendant's reliance on <u>Mastroianni</u> is slightly misplaced. In that case the government official, Yeoman, testified before the grand jury, an action for which Plaintiff Mastroianni conceded Yeoman was entitled to absolute immunity. However, Mastroianni argued that Yeoman was still liable for numerous acts allegedly committed in furtherance of a conspiracy to present false testimony before the grand jury convened. The <u>Mastroianni</u> Court held that Yeoman was not liable for any alleged pre-testimony conspiracy because the only evidence in the record to support such an inference was the substance of Yeoman's grand jury testimony. 173 F.3d at 1367. As the court explained, "we are prohibited from using Yeoman's grand jury testimony as a basis to impose civil liability."

The case at bar is distinguishable from <u>Mastroianni</u> in that this Court need not rely on the substance of Defendant Paulk's grand jury testimony to determine liability under Section 1983. Here, Plaintiff has alleged that Defendant Paulk fabricated evidence to instigate a criminal prosecution in addition to unlawfully exchanging subpoenaed documents for payment. In support of the same Plaintiff cites deposition testimony from Defendant Paulk, Barry McKinley, and others.

---

[3]    Whether a possible exception to the doctrine of absolute immunity exist has not been decided by the Eleventh Circuit, despite the language from the <u>Jones</u> opinion, because the holding by the <u>Jones</u> Court was dicta at best. In <u>Jones</u> it is not clear whether Detective Powers was in fact the complaining witness when he testified before the grand jury. The <u>Jones</u> Court only discussed the possibility that Powers could be construed as such. Therefore, the issue was not squarely before the Court.

This showing is sufficient to allow Plaintiff to survive Defendant Paulk's Motion to Dismiss (Doc. 6) on this claim.

### C. Conspiracy

*See supra* Part I.E. for the law on conspiracy and the heightened pleading requirement in the Eleventh Circuit.

Initially, Defendant Paulk goes out on a limb and argues that Plaintiff's conspiracy claim (Count X) is precluded by the Intracorporate Conspiracy Doctrine. As Defendant explains, under the Intracorporate Conspiracy Doctrine, the employees of a corporation, acting as agents of the corporation, are incapable of conspiring amongst themselves. Dickerson v. Alachua County Commission, 200 f.3d 761, 767 (11th Cir. 2000). However, Defendant cites no authority to support the proposition that the Intracorporate Conspiracy Doctrine applies in noncoporate contexts, specifically in a District Attorney's Office. Therefore, the Court refuses to apply the Intracorporate Conspiracy Doctrine in this case and join Defendant out on the edge of the judicial tree branch in that Defendant essentially seeks to expand the definition of "intracorporate" beyond that clearly supported by the existing laws.

The remainder of Defendant's challenges against Plaintiff's conspiracy claim mimic the arguments made by Defendants Burke and Hodges. *Compare* (Doc. 5, Part III.E.) *with* (Doc. 6, Part III.C.2.). Therefore, Defendant Paulk's arguments concerning Plaintiff's conspiracy claim fail for the same reasons that Defendants Burke and Hodges's arguments failed. *See supra* Part I.E.

### D. Qualified Immunity

*See supra* Part I.F. for the law on qualified immunity.

Defendant Paulk argues he is entitled to qualified immunity because "no case law has been

discovered that would put Paulk on notice that his conduct was legally actionable." Contrarily, as noted above, "[i]t was well established [as early as] 1989 that fabricating incriminating evidence violated constitutional rights." Riley, 104 F.3d at 1253. Therefore, Defendant Paulk is not entitled to the protections of qualified immunity for any of Plaintiff's claims.

### E.  Official Immunity

Under Georgia law, public officers may be personally liable only for negligently performed ministerial acts or discretionary acts performed with malice or intent to injure. Dollar v. Grammens, 294 Ga. App. 888, 890 (2008). The doctrine of official immunity protects public officers from liability where they perform discretionary acts within the scope of their official authority and without wilfulness, malice, or corruption. *Id.* "The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight." *Id.* (citing Murphy v. Bajjani, 282 Ga. 197, 198 (2007)).

A "ministerial act" is one that is commonly "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Id.* On the other hand, a discretionary act is typically one that "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. *Id.* The specific facts of an individual case determine whether an official's acts are ministerial or discretionary. *Id.* Additionally, "[t]he question whether a duty is ministerial or discretionary turns on the character of the specific act, not the general nature of the official's position." *Id.* Finally, "[w]hether an individual is entitled to official immunity is a question of law." *Id.*

Here, Defendant Paulk contends that all of the acts complained of my Plaintiff were

discretionary acts, and the same were performed without malice and/or intent to injure Plaintiff.

Plaintiff contends first that Defendant Paulk's actions were ministerial in nature. In the alternative, Plaintiff contends that if Defendant's actions were discretionary acts, the same were committed with malice and/or intent to injure Plaintiff.

The actions Plaintiff complains of are Defendant Paulk's preparation and issuance of faulty subpoenas and Defendant's improper investigation. It is unclear from Georgia caselaw whether the preparation and issuance of subpoenas is a ministerial or discretionary duty for a district attorney's investigator. The most likely scenario is that the district attorney, or assistant district attorney, would either prepare the subpoena to be issued and provide it to the investigator or direct the investigator to the target of the desired subpoena, leaving the investigator to prepare and issue the same. It is unclear from Georgia caselaw or statutory law whether an investigator may *sua sponte* determine the target of an investigation and proceed accordingly. Contrarily, it is clear that where the target of an investigation is identified for an investigator, the investigator would likely use his/her discretion to determine the best approach to achieve the goals of the investigation.

The Court finds that Defendant Paulk is not entitled to official immunity for his allegedly wrongful acts. Despite the Court's inability to determine whether the preparation and issuance of subpoenas is a ministerial or discretionary duty for a district attorney's investigator, the Court finds that Plaintiff has sufficiently pleaded facts to support a claim that Defendant Paulk's allegedly wrongful acts were committed with malice and/or intent to injury Plaintiff. Concerning "malice" the Eleventh Circuit provided in Peterson v. Baker, 504 F.3d 1331, 1339 (11th Cir. 2007):

> [A]ctual malice requires a deliberate intention to do wrong and denotes express
> malice or malice in fact. That actual malice requires more than harboring bad
> feelings about another is well established. While ill will may be an element of actual

> malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal.  As we understand it, malice in this context means badness, a true desire to do something wrong.  In addition, actual intent to cause injury means an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.

(Internal quotation marks and citations omitted).  As provided in the Complaint, and admitted by Defendant during his deposition, the investigation was done as a "favor" for Phoebe.  (Doc. 1, ¶ 35).  Providing subpoenaed material solely for the use of a private party without regard to use of the same for official investigative purposes militates against Defendant.  Therefore, Plaintiff has adequately alleged that Defendant Paulk acted with intent to cause harm as opposed to the proper reason for initiating a criminal investigation or issuing subpoenas.

### F.  Monell Policy Claim

In establishing the viability of a "Monell policy claim" the Supreme Court held in Monell that:

> Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision making channels. As Mr. Justice Harlan, writing for the Court, said in Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613, 26 L.Ed.2d 142 (1970): Congress included customs and usages in § 1983 because of the persistent and widespread discriminatory practices of state officials. Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law.

21

Even though local governing bodies can be sued directly under Section 1983, they cannot be held liable for the acts of officials they do not have authority to control. Turquitt v. Jefferson County, Ala., 137 F.3d 1285, 1292 (11th Cir. 1998). "A local government must have power in an area in order to be held liable for an official's acts in that area." Id. (quoting McMillian v. Johnson, 88 F.3d 1573 (11th Cir. 1996)). To determine if a local government has authority to control a government official, a court should look to the laws of the state in question to determine whom is charged with direct control of how the government official fulfills his duties. See id. (citing McMillian v. Monroe County, Ala., 520 U.S. 781, 789 (1997).

Defendant Dougherty County contends that it has no authority to control Defendant Paulk. Defendant cites O.C.G.A. § 15-18-14.1 to support it's argument.

In response, Plaintiff contends that O.C.G.A. § 15-18-14.1 does not define Defendant Paulk's employer as a matter of law, and the same "merely authorizes a district attorney to appoint investigators." Additionally, Plaintiff notes that there is no evidence in the record as to who "appointed Mr. Paulk, who paid his salary, who paid his secretary, who paid for his office, office supplies, and clerical support." Plaintiff also notes that his Complaint alleges that all of these things were done by Defendant Dougherty County.

Unfortunately for Plaintiff, the question the Court must answer under Monell and Turquitt is not "who legally employed the government official?". Instead the Court must determine who had authority to exercise supervisory and/or administrative control over the official. See Turquitt, 137 F.3d at 1292. Here, O.C.G.A. § 15-18-14.1 is clear in that the district attorney has the authority to "appoint one investigator to assist the district attonrey in the performance of his or her official duties." O.C.G.A. § 15-18-14.1(a). Furthermore, any individual appointed under O.C.G.A. § 15-18-

14.1(a) serves at the pleasure of the district attorney.  O.C.G.A. § 15-18-14.1(b).  And although there is an enumerated list of duties to be performed by an appointed investigator, O.C.G.A. § 15-18-14.1(c)(6) also provides that the investigator shall "[p]erform such other duties as are required by the district attorney."  Based on the applicable Georgia statute, it is clear that the only person who had authority to control Defendant Paulk as an investigator was Defendant Hodges, as District Attorney.  Therefore, Defendant Dougherty County had no authority to control Defendant Paulk.  Accordingly, Defendants' Motion to Dismiss is **GRANTED** as to Count IX against Defendant Dougherty County.

### G.  Defendant Dougherty County's Sovereign Immunity

In response to Defendant Dougherty County's claims of sovereign immunity as to Plaintiff's state law claims, Plaintiff has withdrawn Count V ("Against Dougherty County----Respondeat Superior for the Negligence and Torts Committed By Its Employee James Paulk") of its Complaint.  Due to Plaintiff's withdrawal of Count V, it is unnecessary for the Court to consider Defendant's arguments addressing the same.  Additionally, Defendant Dougherty County's Second Supplemental Motion to Dismiss (Doc. 20), challenging Plaintiff's state law claim due to an alleged failure to provide the necessary *ad litem* notice pursuant to O.C.G.A. § 36-11-1, is **DENIED as MOOT**.

Based on the above analysis, *see supra* Parts II.A.-G., Defendants' Motion to Dismiss (Doc. 6) is **GRANTED-IN-PART**, as it relates to Count IX of Plaintiff's Complaint against Defendant Dougherty County, and **DENIED-IN-PART**, as it relates to all other arguments against Plaintiff's Complaint..

### CONCLUSION

For the aforementioned reasons, Defendants Burke and Hodges's Motion to Dismiss (Doc.

5) is **DENIED**; Defendants Paulk and Dougherty County's Motion to Dismiss (Doc. 6) is **GRANTED-IN-PART**, **DENIED-IN-PART**; and Defendant Dougherty County's Second Supplemental Motion to Dismiss (Doc. 20) is **DENIED as MOOT**.

Only Counts V and IX of Plaintiff's Complaint alleged wrongful action on the part of Defendant Dougherty County. Because Count V was withdrawn by Plaintiff and Count IX was dismissed by the Court, **Defendant Dougherty County** is hereby **ORDERED TERMINATED** from this action.

**SO ORDERED**, this  30th  day of March, 2009.

/s/W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT JUDGE**